Exhibit A

$ 295.22 $207.00

# General Civil Case Filing Information Form (Non-Domestic)

**Court**
☐ Superior
☐ State

**County** MURRAY

**Docket #** 12-CI-0819 ~ M

**Date Filed** 12/17/2012
MM-DD-YYYY

**Plaintiff(s)**

AMY LANGFORD
| Last | First | Middle I. Suffix Prefix | Maiden |

| Last | First | Middle I. Suffix Prefix | Maiden |

| Last | First | Middle I. Suffix Prefix | Maiden |

| Last | First | Middle I. Suffix Prefix | Maiden |

**No. of Plaintiffs** _____

**Defendant(s)**

JPMORGAN CHASE BANK
| Last | First | Middle I. Suffix Prefix | Maiden |

| Last | First | Middle I. Suffix Prefix | Maiden |

| Last | First | Middle I. Suffix Prefix | Maiden |

| Last | First | Middle I. Suffix Prefix | Maiden |

**No. of Defendants** _____

**Plaintiff/Petitioner's Attorney**      ☐ **Pro Se**

W. ANTHONY COLLINS, JR.
| Last | First | Middle I. Suffix Prefix | Maiden |

**Bar #** _____

---

**Check Primary Type (Check Only ONE)**

☐ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgement Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☒ Tort (If tort, fill in right column)

☐ Other General Civil Specify _____

_____

---

**If Tort is Case Type:**
**(Check no more than TWO**

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☐ Other Specify _____

**Are Punitive Damages Pleaded?** ☐ **Yes** ☐ **No**

# IN THE SUPERIOR COURT OF MURRAY COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **AMY LANGFORD as the administrator of the ESTATE OF WYATT E. LANGFORD and AMY LANGFORD, individually** | ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION** 12-CI· 819 **NO:** |
| **JPMORGAN CHASE BANK MCCALLA RAYMER, LLC FEDERAL HOME LOAN MORTGAGE CORPORATION** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Plaintiffs Amy Langford, as the administrator of the estate of Wyatt E. Langford ("the Estate" or "Wyatt Langford") and Amy Langford ("Langford") as an individual (hereinafter collectively referred to as "Plaintiffs") hereby bring their claims for wrongful foreclosure, fraud and attorney's fees pursuant to O.C.G.A 23-2-114 against JPMorgan Chase Bank ("Chase"), McCalla Raymer,

LLC (McCalla) and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (hereinafter collectively "Defendants"). On information and belief, Plaintiffs hereby allege the following in support of their claims:

## **PARTIES**

### 1.

Plaintiff Wyatt Langford is a legally recognized estate organized under the jurisdiction of the Probate Court of Murray County following the death of Wyatt E. Langford. The letters of administration issued to Ms. Amy Langford are hereby attached as Exhibit 1. Plaintiff Amy Langford is a resident of Murray County residing at the property that is the subject of this action, 571 Parson Road, Chatsworth Georgia, 30705.

### 2.

Defendant Chase is a foreign corporation authorized to do business in the State of Georgia and can be served through its Registered Agent: CT Corporation Systems, 1201 Peachtree Street, NE, Atlanta Georgia, 30361.

### 3.

Defendant McCalla is a limited liability company organized and existing under the laws of the State of Georgia. It can be served through is Registered Agent: Marty Stone, Six Concourse Parkway, Suite 3200, Atlanta Georgia, 30328.

4.

Defendant Freddie Mac is a private corporation operating under the purview of the United States Congress in the State of Georgia. It can be served through its agent in fact in the State of Georgia, Prommis Solutions LLC at National Registered Agents, Inc., 3675 Crestwood Parkway, Suite 350, Duluth Georgia, 30096.

## JURISDICTION AND VENUE

5.

Jurisdiction and venue are proper pursuant to O.C.G.A. §§15-6-8 and 14-2-510, as the property that is the subject of this action is located in this county. Additionally, wrongful acts were committed in Murray County, Georgia.

## OPERATIVE FACTS

6.

Wyatt E. Langford, now deceased, and his wife Judith Langford, also deceased, had lived in the property at 571 Parson Road, Chatsworth Georgia, 30705 for the majority of their marriage. The property was handed down to Plaintiffs from their family and had been in the Langford family for several generations. The property is situated on a golf course that was recently developed. The Langford family originally owned the property used to construct the golf course that the property is situated on.

7.

Both the estate and his wife Judith were lifelong residents of Murray County and both worked at local businesses. In particular, Wyatt Langford was a mechanic with a local company servicing their commercial fleet. Judith Langford was an employee at a local ~~carpet company~~ *Bank* for many years.

8.

On or about, June or July 2007, Judith and Wyatt Langford determined that they would like to make some supplemental income. Judith and Wyatt Langford agreed that the best way to do this was to build a garage building near their residence that would allow Wyatt to perform freelance work as an auto mechanic. Therefore, Judith and Wyatt approached Defendant Chase about receiving a loan and securing it with the subject property. Chase agreed and issued Plaintiff Wyatt Langford a loan in the approximate amount of $80,000.

9.

Plaintiff Wyatt Langford constructed the additional building on his property and began to derive income from his free lance mechanic business. Plaintiff Wyatt Langford also loyally, and without fail, paid down the mortgage that he had taken out on the subject property.

10.

On August 18, 2009 Plaintiff's wife, Judith Langford was the victim of an unexpected and deadly heart attack. The heart attack and death occurred unexpectedly, without warning and with dire repercussions. In addition to the extreme emotional loss that the Wyatt Langford underwent, it also deprived the Langford family of a crucial source of income. Mrs. Judith Langford had been a full time worker and her income was integral to the family's monthly budget.

11.

In early 2010, having attempted to make ends meet with the loss of his wife's income, Wyatt Langford contacted Defendant Chase and inquire about a loan modification. Defendant Chase informed Wyatt Langford that he would qualify for a loan modification due to his wife's death and instructed him to fill out and send to Defendant Chase a modification package. Wyatt Langford complied with this request.

12.

Over the course of the next two years, Wyatt Langford communicated with Defendant Chase on a monthly or weekly basis. He was repeatedly asked to submit the same paperwork on a monthly or bi-monthly basis and Mr. Langford complied with these requests. At all times Defendant Chase informed Wyatt Langford that he qualified for a loan modification and that it would be processed

quickly. At no time did Defendant Chase indicate that Mr. Langford would not qualify for a loan modification. Further, Defendant Chase instructed Wyatt Langford that he did not have to make payments on the loan during the modification period of his mortgage due to his unique hardship, i.e., the death of his wife.

13.

Due to the fact that this land had been in his family for many years, and the fact that Defendant Chase continually told him that he qualified for a mortgage modification, but then refused to execute the modification, Wyatt Langford began to suffer depression and anxiety issues due to the actions of Defendant Chase. In addition, Wyatt Langford began to consume alcohol in excess of his normal consumption levels due to the actions of Defendant Chase.

14.

Wyatt Langford sought medical treatment for his depression, anxiety and increased use of alcohol, all caused by the actions of Defendant Chase. His medical doctor prescribed medications for anxiety and depression to Wyatt Langford. He took these medications as prescribed and continued to deal with Defendant Chase in a good faith effort to modify his mortgage and continue to pay his obligations.

15.

After a year of dealing with Defendant Chase and being told that he was "qualified" for a mortgage modification and that the process was "easy" and "simple" and that it would be "completed soon," Defendant Chase wrongfully sent Wyatt Langford a foreclosure notice for the first time on or about January or February of 2012. Alarmed, Wyatt Langford contacted Defendant Chase and inquired as to why he had been sent this notice. Defendant Chase informed him that it was a mistake and they would cancel the foreclosure sale. This notice was particularly alarming to Wyatt Langford because he had significant equity in the property and it had been in the family for many years. In addition, after the death of his wife, his daughter and grandchild had moved back in the property to assist Wyatt Langford and his daughter and grandchild permanently resided there. Wyatt Langford continued to seek treatment for the depression and anxiety that the actions of Defendant Chase were causing him.

16.

Defendant Chase continued this same pattern of behavior for the next eight months, alternatively telling Wyatt Langford that he would be given a modification and then wrongfully noticing a foreclosure on his family property. Each time Wyatt Langford would properly communicate with Chase and Chase would cancel

the wrongful foreclosure. This occurred at least three times from January 2012 to July 2012.

17.

On August 13, 2012, Wyatt Langford awoke and was suffering from anxiety, depression and had issues breathing. He visited his primary care physician and informed her of his depression and anxiety due to his dealings with Defendant Chase. His primary care physician again prescribed him medication for depression. Upon returning home, Wyatt Langford began to review recent correspondence from Chase concerning yet another wrongful foreclosure notice on his home. While reviewing this correspondence, Wyatt Langford suffered a massive stroke, related to the stress and anxiety caused by the actions of Defendant Chase. Wyatt Langford died as a result of this stroke.

18.

Langford's sole heir, Amy Langford immediately began communicating with Chase regarding the death of her father and the retention of the family homestead. Chase agreed that they would postpone any foreclosure until letters of administration had been issued for her father's estate in response to Langford's requests. During this time Chase continued to send correspondence to "Wyatt and Judith Langford" despite multiple notifications that both were deceased.

19.

After several more promises that any foreclosure or action would be

postponed while the Estate was probated, and several more wrongful foreclosure

notices from Defendant Chase, Langford felt no choice but to seek legal assistance.

Langford felt compelled to seek this legal assistance after receiving a third

wrongful foreclosure notice from Chase in late September 2012. This wrongful

foreclosure notice was authored and signed by Defendant McCalla and stated that:

> The entity that has full authority to negotiate, amend, and modify all
> terms of the mortgage with debtor is:
>
> JPMorgan Chase Bank, National Association
> 3415 Vision Drive
> Columbus Ohio, 43219
> 800-446-8939

Defendant Chase noted that the above quoted provision was provided in

order to comply with the Georgia Law concerning foreclosure notices.

20.

To this end, Langford engaged the Guardian Law Group ("Guardian") on

October 17, 2012, to attempt to negotiate with Defendant Chase. Guardian

immediately contacted Chase and inquired as to the status of the modification and

noted that the original mortgagee had died after reading correspondence received

from Defendant Chase. Defendant Chase indicated that were aware of the

circumstances and planned to postpone the foreclosure. Defendant Chase

requested letters of administration. Guardian informed Defendant Chase that the letters were pending and would be sent to Chase as soon as they were issued.

21.

Letters of Administration for the Estate were issued to Plaintiff Langford on October 29, 2012. These letters of administration were immediately provided to Defendant Chase. Defendant Chase again stated that they were going to postpone the foreclosure and provide a modification to Plaintiff Langford due to the fact that both of her parents, the original mortgagees, were now deceased. Guardian also contacted Defendant McCalla, who also stated that the foreclosure would be postponed and that Defendant Chase had received all necessary paperwork.

22.

Due to the passed bad acts of Defendants Chase and McCalla, Guardian and Langford continued to contact Defendants Chase and McCalla regarding postponement of the foreclosure sale. Both Defendants continued to assure Plaintiff that the sale would be postponed, although they noted that they were waiting for final approval for some higher authority.

23.

On the day before the scheduled foreclosure sale, November 5, 2012, Defendants again contacted Defendants Chase and McCalla, who both assured Plaintiff that the sale would likely be postponed and to call back on the day of the

foreclosure sale in order to confirm. Plaintiffs acknowledged this and agreed to do so.

24.

On November 6, 2012, Guardian contacted Defendants Chase and McCalla on behalf of Plaintiffs to confirm that the sale had been postponed. In stark contrast to the representations of McCalla and Chase, Guardian was informed that the sale had not been postponed and had gone forward. Additionally, Defendants informed Guardian that the sale had not been postponed because "Freddie Mac" had refused to approve the postponement. This was the first time that Plaintiffs or Guardian had ever been informed that Freddie Mac was involved the decision process.

25.

Plaintiffs immediately contacted Freddie Mac regarding the loan. Freddie Mac stated to Plaintiffs that Freddie Mac was unaware why Defendants Chase and McCalla had been communicating with Plaintiffs, as the loan was owned by Freddie Mac. Freddie Mac requested Plaintiffs send them documentation of the sale. Additionally, Freddie Mac stated that they would launch an investigation into this matter and seek to resolve it.

26.

Instead of launching an investigation and seeking to resolve this matter, Freddie Mac has apparently filed a deed under power of sale and claim that they properly foreclosed on the subject property, despite the fact that they never noticed a foreclosure or sought to communicate with Plaintiffs, and despite the fact that they promised Plaintiffs that no such action would be taken.

27.

Further, Defendant Freddie Mac is wrongfully seeking to evict Plaintiffs from their ancestral home before the Courts of this County have had the opportunity to probated the Estate's interest. Indeed, Defendants filed their action for eviction on December 10, 2012, in what appears to be a calculated attempt to wrongfully evict Plaintiffs during the Christmas season.

28.

Despite the fact that Wyatt Langford has been deceased since August 13, 2012, and despite the fact that Defendant Freddie Mac has foreclosed and is attempting to evict Plaintiffs, Defendant Chase continues to send large amounts of correspondence to Wyatt Langford promising to modify his mortgage.

## COUNT I

## WRONFUL FORECLOSURE- SET ASIDE OF SALE

29.

Plaintiffs adopt and incorporate by reference the allegations contained in Paragraphs 1 through 28 as if fully set forth herein.

30.

Defendant has a statutory duty to exercise good faith in exercising all foreclosures. Additionally, Defendant has a duty to deal fairly with Plaintiffs relating to any foreclosure and has a duty to deal fairly with Plaintiffs when exercising the power of foreclosure. *See* O.C.G.A. § 23-2-114. Further, Defendants have a statutory duty to provide notice to Defendants "of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor." *See* O.C.G.A. § 44-14-162.2.

31.

Defendant breached both of those duties to Plaintiffs by refusing to simply provide the modification that was requested, despite numerous assurances to the contrary that said modification would be granted. Further, Defendants willfully

and purposefully failed to disclose the name, address and phone number of the entities that had the final authority to renegotiate, modify or otherwise alter the terms of the mortgage note. Specifically, Defendants McCalla and Chase identified Defendant Chase as the provider that had the final authority to renegotiate the loan. This was factually incorrect, and as noted on the last day prior to the foreclosure sale, the only party that had the authority to make such a decision was Defendant Freddie Mac.

32.

This breach caused severe damage to Plaintiffs, and threatens to cause additional harm in the form of evicting Plaintiffs from their ancestral home during the holiday season.

33.

Thus, Plaintiffs are entitled to have the foreclosure set aside. Additionally, Plaintiffs' are entitled to compensatory damages arising from Wyatt Langford's death, mental and emotional anguish and well as punitive damages due to the malicious, vindictive and willful nature of Defendants' actions. Further, Plaintiffs are entitled to injunctive relief barring Defendant Freddie Mac from evicting Plaintiff and her family for her home.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34.

Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 33 as if fully set forth herein.

35.

As a result of Defendants' intentional breach of their duties as described above, Plaintiffs has incurred extreme mental pain and aggravation, and actual physical illness for which they have had to receive medical treatment, caused by the foreclosure proceedings and failure to honor their agreements. The behaviors taken by Defendants were wanton, willful malicious and outside the bounds of normal society. Specifically, Defendants willfully made representations to Wyatt Langford and then dishonored those representations up to and until the point where, while reviewing correspondence from Defendants, he had a massive stroke and died. Then, despite representations to the contrary, Defendant Chase represented that it was the party that had the authority to negotiate a modification with Plaintiff Langford, when it did not. Finally, Defendant Freddie Mac is now seeking to evict Plaintiff and her family during the Christmas Season, despite its assurances that it would investigate these issues and resolve them amicably.

36.

As such, pursuant to O.C.G.A. § 51-12-6, Plaintiffs are entitled to recover damages for extreme emotional distress in an amount to be determined at trial. Plaintiffs are additionally entitled to punitive damages arising from their emotional distress, and in the case of the Estate, the actual death of Wyatt Langford.

## COUNT III

## FRAUD

37.

Plaintiffs adopt and incorporate by reference the allegations contained in Paragraphs 1-36 as if fully set forth herein.

38.

Defendants have a legal obligation not to make intentional omissions or misrepresentations of fact when doing business in the State of Georgia.

39.

Nonetheless, Defendants made several misrepresentations and omissions of material fact, both orally and in writing in their own records to induce Plaintiffs into default, including the following;

(1)Defendant Chase repeatedly telling Plaintiffs that they were qualified for a modification program and by representing to Plaintiffs

that they need not make payments on their mortgage until the modification process was complete;

(2) Defendants Chase and McCalla communicating to Plaintiffs that JPMorgan Chase Bank, N.A. had the full authority to negotiate and modify the mortgage that is the subject of this action, when in fact, JPMorgan Chase Bank N.A. had already sold, or planned to sell, the rights to this mortgage to Freddie Mac;

(3)Defendants Chase and McCalla representing to Plaintiffs that, due to the deaths of the original mortgagees, that any foreclosure proceedings would be stopped and that JPMorgan Chase Bank had the full authority to stop these foreclosure proceedings when they did not;

(4) Defendant Freddie Mac falsely represented to Plaintiffs that they would launch an investigation into this matter and promptly and amicably resolve it, when Freddie Mac had no such intention of doing so, and instead intended to evict Plaintiffs during Christmas.

40.

Plaintiffs reasonably and justifiably relied on Defendants verbal and written misrepresentations to their detriment. This reliance was reasonable based on the nature of the relationships between the parties and the written and legally formal nature of the communications.

41.

Plaintiffs' reliance on Defendants fraudulent representations have proximately caused Plaintiffs substantial injury in an amount to be proven at trial. Additionally, Defendants have acted willfully, recklessly and/or maliciously, and with specific intent to cause Plaintiffs harm. Plaintiffs are entitled to recover compensatory and punitive damages, as well as their attorney's fees, from Defendants.

42.

Plaintiffs' reliance on Defendants fraudulent representations have proximately caused Plaintiffs substantial injury in an amount to be proven at trial. Additionally, Defendants have acted willfully, recklessly and/or maliciously, and with specific intent to cause Plaintiffs harm. Plaintiffs are entitled to recover compensatory and punitive damages, as well as their attorney's fees, from Defendants.

## COUNT IV

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

43.

Plaintiff incorporates by reference Paragraphs 1 through 42 of this Complaint as if fully restated herein.

44.

Defendants have a duty of good faith and fair dealing when engaging in business by contract in the State of Georgia.

45.

Defendants by making numerous promises that they never intended to actually fulfill, misrepresenting the party who had the authority to negotiate a modification of the loan, and sending an erroneous and misleading notice of foreclosure, have breached that duty of good faith and fair dealing.

46.

Due to Defendant's breach of the duty of good faith and fair dealing, Plaintiffs have been damaged in an amount to be proven at trial. Additionally, because of the wanton, willful, malicious and intentional nature of Defendants acts, Plaintiffs are entitled to recover punitive damages and damages flowing from their mental anguish and emotional distress.

## COUNT V

## DECLARATORY JUDGMENT

48.

Plaintiffs incorporate by reference Paragraphs 1 through 47 of this Complaint as if fully restated herein.

49.

Defendants McCalla and Chase falsely represented in the foreclosure notce that Defendant Chase had the full authority to negotiate and modify the subject loan, despite the fact that Freddie Mac had already purchased or was set to purchase the subject loan.

50.

Defendants have all sought to go forward with the foreclosure sale and eviction, despite the illegal and wrongful notice, and still seek to do so to this day.

51.

There exists an actual controversy between Plaintiffs and Defendant in regard to the validity of the foreclosure notice and sale.

52.

Justice requires that this Court make a declaration regarding the rights and legal relations between the Plaintiffs and Defendant as to the validity of foreclosure notice and subsequent actions between the parties, including the pending eviction.

53.

Plaintiffs are entitled to an order from this Court stating that the foreclosure notice, subsequent sale and the impending eviction were improper, that the sale

should be set aside and that the eviction action filed by Defendant Freddie Mac is wholly invalid as they are not the proper title holder to the land at issue.

## COUNT VI

## ATTORNEY'S FEES AND REASONABLE COSTS OF LITIGATION

54.

Plaintiffs incorporate by reference Paragraphs 1 through 53 of this Complaint as if fully restated herein.

55.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense.

56.

Pursuant to O.C.G.A. § 13-6-11, Plaintiffs are entitled to recovery of their expenses of litigation, including, but not limited to, attorneys' fees.

WHEREFORE, Plaintiffs pray that this Court:

(a) award compensatory and punitive damages in an amount to be determined in the enlightened conscience of a jury;

(b) halt the eviction of Plaintiffs from their home and enjoin Defendants from evicting Plaintiffs from their home for the pendency of this litigation;

(c) award Plaintiffs attorney's fees and reasonable costs of litigation;

(d)     issue a declaratory judgment stating that the modification foreclosure

        was improper and is null and void; and

(e)     for such other and further relief as this Court deems just and equitable.

Plaintiffs hereby demand a TRIAL BY JURY.


Respectfully submitted this 17th day of December, 2011.

W. Anthony Collins, Jr.,
Georgia Bar Number: 141712
Smith and Collins, Attorneys, LLC.
Thomas C. Blaska
Georgia Bar No:
The Blaska Law Firm
8565 Dunwoody Place Suite B
Atlanta, Georgia 30350
404-806-7180



22

# VERIFICATION

STATE OF Georgia

COUNTY OF <u>Murray</u>

Before me the undersigned authority, personally appeared Amy Langford who on her

oath states that the facts set forth in the foregoing Complaint responses are true and correct and

within her personal knowledge.

_Amy Langford_
Amy Langford

SIGNED AND SWORN TO before me this 17th day of December, 2012.

_Dana Burch_
NOTARY PUBLIC

Print Name: Dana Burch

My Commission expires: 9-13-13

IN THE SUPERIOR COURT OF MURRAY COUNTY STATE OF GEORGIA

Amy Langford / admin of estate of Wyatt E. Langford

VS

CIVIL ACTION NUMBER 12-CI-0819

DEFENDANT
Jpmorgan Chase Bank  Mccalla Raymer LLC.
Federal Home Loan Mort. Corp.

SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This  17 day of  December          2012


Connie Reed
Clerk of Superior Court

By
Connie Reed
Clerk

## IN THE SUPERIOR COURT OF MURRAY COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **AMY LANGFORD as the administrator of the ESTATE OF WYATT E. LANGFORD and AMY LANGFORD, individually** | ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO:** 12-CI-819 |
| **JPMORGAN CHASE BANK MCCALLA RAYMER, LLC FEDERAL HOME LOAN MORTGAGE CORPORATION** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | **JURY TRIAL DEMANDED** |

### MOTION FOR SPECIAL APPOINTMENT OF PROCESS SERVER

NOW COMES, Amy Langford ("Movant"), by and through his undersigned attorney, and moves pursuant to O.C.G.A. § 9-11-4(c) for an order appointing John A. Fox to serve JP Morgan Chase Bank, McCalla Raymer LLC and Federal Home Loan Mortgage Corporation ("Defendants") personally with a copy of the Complaint. As grounds therefore, Movant shows that prompt service of process upon all Defendants must take place outside of Murray County, that the office of the sheriff has an unusually heavy current workload and that John A. Fox is a citizen of the United States, has not been convicted of a

felony, is over twenty-one (21) years of age, and has experience in locating persons to be served and in serving process, all as more fully appears from the Affidavit of John A. Fox attached hereto as Exhibit "A".

WHEREFORE, Movant prays that his Motion be granted and that John A. Fox be appointed to serve process on the Defendant and that Movant have such other and further relief as is just and proper.

Dated this 17th day of December, 2012.

W. Anthony Collins, Jr.,
Georgia Bar Number: 141712
Smith and Collins, Attorneys, LLC.
Thomas C. Blaska
Georgia Bar No:
The Blaska Law Firm
8565 Dunwoody Place Suite B
Atlanta, Georgia 30350
404-806-7180

FILED IN OFFICE

# IN THE SUPERIOR COURT OF MURRAY COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| AMY LANGFORD as the administrator of the ESTATE OF WYATT E. LANGFORD and AMY LANGFORD, individually | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CIVIL ACTION** NO: 12-CJ-819 |
| JPMORGAN CHASE BANK MCCALLA RAYMER, LLC FEDERAL HOME LOAN MORTGAGE CORPORATION | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | **JURY TRIAL DEMANDED** |

## AFFIDAVIT IN SUPPORT
## OF
## MOTION FOR SPECIAL APPOINTMENT OF PROCESS SERVER

STATE OF GEORGIA
COUNTY OF FULTON

      PERSONALLY APPEARED before me, an officer duly authorized by law to administer oath, JOHN A. FOX, who after first being duly sworn, states:

1.     My name is JOHN A. FOX, and I am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. This Affidavit is given voluntarily in support of movant's Motion for Special Appointment of Process Server.

2. Movant is in danger of being evicted from his home as a result of a wrongful and malicious foreclosure.

3. I am a citizen of the United States; I have not been convicted of a felony; I am over twenty-one (21) years of age; and I am available to serve process immediately. I have experience in serving process and am willing to be appointed and to serve process in this action. Furthermore, I am not related to the defendants or the movant and I have no interest in the outcome of this action.

_____
JOHN A. FOX

Sworn to and subscribed before me this 17th day of December 2012, by JOHN A. FOX who is known to me and who did take an oath.

_____
Robert Pottage
My Commission expires:

EXHIBIT "A"

ROBERT POTTAGE
Notary Public, DeKalb County, Georgia
My Commission Expires May 9, 2015

**CIVIL ACTION NO:** 12-CI-0819

**ATTORNEY ADDRESS:**
SMITH COLLINS, LLC
Anthony Collins
8565 Dunwoody Place
Building 15, Suite B
Atlanta, GA 30350
404-806-7180

Superior COURT
Murray COUNTY

Amy Langford/ Admin of Estate of
Wyatt E. Langford,
*Plaintiff,*

**AME OF PARTY TO BE SERVED:**

JP Morgan Chase Bank, C/O
Registered Agent, CT Corporation System
1201 Peachtree Street, NE,
Atlanta, GA 30361

vs

JP Morgan Chase Bank,
McCalla Raymer, Federal Home Loan
Mortgage Corporation,
*Defendants.*

## AFFIDAVIT OF SERVICE

X    I have perfected service of process upon this defendant, <u>JP Morgan Chase Bank</u>, by serving their Registered Agent, <u>CT Corporation System (Quinn Evans accepted service)</u> at address as listed above.

Service of process was perfected by serving a filed copy of the following:

- *Summons,*
- *Verified Complaint,*
- *Emergency Motion for Temporary Restraining Order and Injunctive Relief*
- *Order Rule N I S I*
- *Process Server Order.*

Date of service: 12-21-2012
Time of service: 11:15am

Served by: _____
John "Juliani" Fox,
Process Server

Subscribed and sworn to me on this

_____ day of _____ 20___

_____
Notary Public

**CIVIL ACTION NO:** 12-CI-0819

**ATTORNEY ADDRESS:**
SMITH COLLINS, LLC
Anthony Collins
8565 Dunwoody Place
Building 15, Suite B
Atlanta, GA 30350
404-806-7180

Superior COURT
Murray COUNTY

Amy Langford/ Admin of Estate of
Wyatt E. Langford,
_Plaintiff._

**AME OF PARTY TO BE SERVED:**

McCalla Raymer,
6 Concourse Parkway, Suite 3200
Atlanta, GA 30328

vs

JP Morgan Chase Bank,
McCalla Raymer, Federal Home Loan
Mortgage Corporation,
_Defendants._

## AFFIDAVIT OF SERVICE

X    I have perfected service of process upon this defendant, McCalla Raymer, by serving Robert Michael Sheffield, Senior Counsel for McCalla Raymer, at address as listed above.
Service of process was perfected by serving a filed copy of the following:
-    _Summons,_
-    _Verified Complaint,_
-    _Emergency Motion for Temporary Restraining Order and Injunctive Relief_
-    _Order Rule N I S I_
-    _Process Server Order._

Date of service: 12-21-2012
Time of service: 9:50am

Served by: _____
John "Juhani" Fox,
Process Server

Subscribed and sworn to me on this

_____ day of _____ 20___

_____
Notary Public

**CIVIL ACTION NO:** 12-CI-0819

**ATTORNEY ADDRESS:**
SMITH COLLINS, LLC
Anthony Collins
8565 Dunwoody Place
Building 15, Suite B
Atlanta, GA 30350
404-806-7180

Superior COURT
Murray COUNTY

Amy Langford/ Admin of Estate of
Wyatt E. Langford,
  *Plaintiff,*

**NAME OF PARTY TO BE SERVED:**

*Federal Home Loan Mortgage Corp.*
*To Prommis Solutions, LLC*
*3675 Crestwood Parkway, 350*
*Duluth, GA 30096*

vs

JP Morgan Chase Bank,
McCalla Raymer, Federal Home Loan
Mortgage Corporation,
  *Defendants.*

## AFFIDAVIT OF SERVICE

X   I have perfected service of process upon this defendant, *Federal Home Loan Mortgage Corp.*
by serving *Agent and Attorney in fact, Prommis Solutions, LLC*
at address as listed above. *To National Registered Agents,*
Service of process was perfected by serving a filed copy of the following: *Dianne Jackson*
*accepted service.*
- *Summons,*
- *Verified Complaint,*
- *Emergency Motion for Temporary Restraining Order and Injunctive Relief*
- *Order Rule N I S I*
- *Process Server Order.*

Date of service: *12-21-12*
Time of service: *9:10 AM*

Served by: _____
John "Juhani" Fox,
Process Server

Subscribed and sworn to me on this

_____ day of _____ 20___

0

_____
Notary Public

IN THE ~~MAGISTRATE~~ *SUPERIOR* COURT OF *MURRAY* COUNTY

STATE OF GEORGIA

*AMY LANGFORD, ADMINISTRATOR*
*OF THE ESTATE OF WYATT E*
*LANGFORD, INDIVIDUAL*
_____Plaintiff,_____

                v.

*JP MORGAN CHASE BANK*
*MCCALLA RAYMER, LLC*
*FEDERAL HOME LOAN*
_____Defendant. *MORTGAGE CORPORATION*

Case No. *12-CI-0819-M*

☐  Statement of Claim

☑  Dispossessory

☐  Other Civil

☐  Criminal

## ENTRY OF APPEARANCE

        Comes now the undersigned attorney at law and enters his or her appearance as
attorney of record for the ☐ Plaintiff ☐ Defendant herein, pursuant to Unif. Mag. Ct.
Rule 7.1.  Said attorney appears as ☐ lead counsel or as ☑ local or substitute counsel
for this hearing only.  All Court notices and correspondence shall be sent to lead counsel.

        This *28th* day of *December* _____, 20*12* _____.

                                Respectfully submitted,

                                _____

                                Georgia Bar No. *259850*

Attorney's Name and Address:

*Robert A. Fierman*

_____

_____

_____

Work Phone: *770 851-1958*

Home Phone: _____ (required in criminal cases)

FILED IN OFFICE

# IN THE SUPERIOR COURT OF MURRAY COUNTY
## STATE OF GEORGIA

AMY LANGFORD, AS THE
ADMINISTRATOR OF THE ESTATE
OF WYATT E. LANGFORD AND
AMY LANGFORD, INDIVIDUALLY,

       Plaintiff,

:
:
:
:
:
:
:
:
:

      Civil Action File No.:
      12-CI-819-M

JPMORGAN CHASE BANK, MCCALLA :
RAYMER, LLC, FEDERAL HOME
LOAN MORTGAGE CORPORATION,

      Defendants.

:
:
:
:
:

## DEFENDANT MCCALLA RAYMER, LLC'S VERIFIED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' VERIFIED COMPLAINT

COMES NOW, Defendant McCalla Raymer, LLC ("McCalla" or "Defendant") and files this its Answer and Affirmative Defenses to the "Verified Complaint" (the "Complaint") filed by Plaintiffs Amy Langford as the Administrator of the Estate of Wyatt E. Langford, and Amy Langford, individually (collectively, the "Plaintiffs"), showing this Honorable Court as follows:

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim against McCalla upon which relief can be granted and therefore should be dismissed.

### SECOND AFFIRMATIVE DEFENSE

Any injury suffered by Plaintiffs was caused in whole or in part by the actions or inactions of Plaintiffs or others, and not by the actions or inactions of McCalla.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs, by the exercise of ordinary care, could have avoided the consequences of any

act or failure to act by McCalla.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver, estoppel, and/or unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by Plaintiffs' failure to mitigate Plaintiffs' alleged damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Plaintiff has suffered no injury or damage arising from any conduct, act or omission of McCalla.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by Plaintiffs' culpable or inexcusable neglect.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged damages were caused, in whole or in part, by Plaintiffs' own actions or omissions, or by the actions or omissions of parties beyond the control of McCalla.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because McCalla has acted at all times in accordance with the terms of the relevant promissory note and/or security deed.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have breached the terms of the relevant promissory note and/or security deed.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against McCalla must fail due to Plaintiffs' failure to tender amounts owed.

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Answer of McCalla Raymer, LLC

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure of consideration.

## THIRTEENTH AFFIRMATIVE DEFENSE

Subject to and without in any manner waiving any of its rights, defenses, or objections, McCalla answers the individually-numbered paragraphs of Plaintiffs' Complaint as follows:

## PARTIES

1.

McCalla is without information sufficient to admit or deny the allegations of Paragraph 1 of Plaintiffs' Complaint and therefore denies same.

2.

McCalla is without information sufficient to admit or deny the allegations of Paragraph 2 of Plaintiffs' Complaint and therefore denies same.

3.

McCalla admits the allegations contained in Paragraph 3 of Plaintiffs' Complaint.

4.

McCalla is without information sufficient to admit or deny the allegations of Paragraph 4 of Plaintiffs' Complaint and therefore denies same.

## JURISDICTION AND VENUE

5.

In response to Paragraph 5 of Plaintiffs' Complaint, McCalla states that this Paragraph sets forth a legal conclusion to which no response is necessary. To the extent a response is deemed required, this Paragraph is denied. Further responding, McCalla states that the statute

cited in this Paragraph speaks for itself and therefore no response from McCalla to this Paragraph is required. To the extent a response is deemed required, this Paragraph is denied.

## OPERATIVE FACTS

6.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 6 of Plaintiffs' Complaint and therefore denies same.

7.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 7 of Plaintiffs' Complaint and therefore denies same.

8.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 8 of Plaintiffs' Complaint and therefore denies same.

9.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 9 of Plaintiffs' Complaint and therefore denies same.

10.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 10 of Plaintiffs' Complaint and therefore denies same.

11.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 11 of Plaintiffs' Complaint and therefore denies same.

12.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 12 of Plaintiffs' Complaint and therefore denies same.

13.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 13 of Plaintiffs' Complaint and therefore denies same.

14.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 14 of Plaintiffs' Complaint and therefore denies same.

15.

In response to Paragraph 15 of Plaintiffs' Complaint, McCalla states that it sent a statutorily-required pre-foreclosure notice letter on behalf of its client, JPMorgan Chase Bank, National Association, addressed to Wyatt Eddie Langford and Judy Dianne Langford in February 2012, via certified mail, return-receipt requested and via United States Mail. McCalla is without information sufficient to admit or deny the remaining allegations contained in Paragraph 15 of Plaintiffs' Complaint and therefore denies same.

16.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 16 of Plaintiffs' Complaint and therefore denies same.

17.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 17 of Plaintiffs' Complaint and therefore denies same.

18.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 18 of Plaintiffs' Complaint and therefore denies same.

19.

In response to Paragraph 19 of Plaintiffs' Complaint, McCalla states that McCalla sent a statutorily-required pre-foreclosure notice letter on behalf of its client, JPMorgan Chase Bank, National Association, addressed to Wyatt Eddie Langford and Judy Dianne Langford in September 2012 via certified mail, return-receipt requested and via United States Mail. Responding further, McCalla states that this correspondence contained, among other things, the following statement:

> JPMorgan Chase Bank, National Association holds the Note and Security Deed to your property and services your loan on behalf of Federal Home Loan Mortgage Corporation (Freddie Mac) the current owner on your loan. The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is:
>
> JPMorgan Chase Bank, National Association
> 3415 Vision Drive Columbus, OH 43219
> 800-446-8939
>
> Please note that this letter is being sent to you in order to comply with Georgia statutory foreclosure law requirements. Nothing in this letter should be considered as preventing you from exercising the Borrower's Rights as explained in the Initial Communications Letter dated September 12, 2012.

McCalla is without information sufficient to admit or deny the remaining allegations of Paragraph 19 of Plaintiffs' Complaint and therefore denies same.

20.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 20 of Plaintiffs' Complaint and therefore denies same.

21.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 21 of Plaintiffs' Complaint and therefore denies same. Responding further, McCalla denies that McCalla at any point stated that the foreclosure sale of the subject real property would be postponed.

22.

McCalla denies the allegations of Paragraph 22 of Plaintiffs' Complaint.

23.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 23 of Plaintiffs' Complaint and therefore denies same.

24.

In response to Paragraph 24 of Plaintiffs' Complaint, McCalla states that the subject real property was sold under power of sale on November 6, 2012. McCalla is without information sufficient to admit or deny the remaining allegations contained in Paragraph 24 of Plaintiffs' Complaint and therefore denies same.

25.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 25 of Plaintiffs' Complaint and therefore denies same.

26.

In response to Paragraph 26 of Plaintiffs' Complaint, McCalla states that a Deed Under Power evidencing the foreclosure sale of the subject real property was recorded on December 7, 2012, at Deed Book 775, Page 82 of the Murray County, Georgia real property records.

Responding further, McCalla is without information sufficient to admit or deny the remaining allegations contained in Paragraph 26 of Plaintiffs' Complaint and therefore denies same.

27.

In response to Paragraph 27 of Plaintiffs' Complaint, McCalla states that McCalla was retained by co-defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") to effectuate dispossessory proceedings with respect to the subject real property and that McCalla has filed an action in the Magistrate Court of Murray County seeking a writ of possession to the subject real property on behalf of its client, Freddie Mac. McCalla denies the remaining allegations of Paragraph 27 of Plaintiffs' Complaint.

28.

McCalla is without information sufficient to admit or deny the allegations contained in Paragraph 28 of Plaintiffs' Complaint and therefore denies same.

## COUNT I

## WRONGFUL FORECLOSURE - SET ASIDE OF SALE

29.

McCalla hereby incorporates Paragraphs 1-28 of this Answer and Affirmative Defenses by reference as if fully set forth herein.

30.

In response to Paragraph 30 of Plaintiffs' Complaint, McCalla states that the statutes cited in this Paragraph speaks for itself and therefore no response from McCalla to this Paragraph is required. To the extent a response is deemed required, this Paragraph is denied.

31.

McCalla denies the allegations contained in Paragraph 31 of Plaintiffs' Complaint.

32.

McCalla denies the allegations contained in Paragraph 32 of Plaintiffs' Complaint.

33.

McCalla denies the allegations contained in Paragraph 33 of Plaintiffs' Complaint. McCalla further denies Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint.

## COUNT II

## INFLICTION OF EMOTIONAL DISTRESS

34.

McCalla hereby incorporates Paragraphs 1-33 of this Answer and Affirmative Defenses by reference as if fully set forth herein.

35.

McCalla denies the allegations contained in Paragraph 35 of Plaintiffs' Complaint.

36.

McCalla denies the allegations contained in Paragraph 36 of Plaintiffs' Complaint. McCalla further denies that Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint.

## COUNT III

## FRAUD

37.

McCalla hereby incorporates Paragraphs 1-36 of this Answer and Affirmative Defenses by reference as if fully set forth herein.

38.

In response to Paragraph 38 of Plaintiffs' Complaint, McCalla states that this Paragraph sets forth a legal conclusion to which no response is necessary. To the extent a response is deemed required, this Paragraph is denied. Responding further, McCalla denies making any omissions or misrepresentations of fact, intentional or otherwise, to Plaintiffs.

39.

McCalla denies the allegations contained in Paragraph 39 of Plaintiffs' Complaint.

40.

McCalla denies the allegations contained in Paragraph 40 of Plaintiffs' Complaint. Responding further, McCalla denies making any omissions or misrepresentations of fact, intentional or otherwise, to Plaintiffs.

41.

McCalla denies the allegations contained in Paragraph 41 of Plaintiffs' Complaint. McCalla further denies that Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint.

42.

McCalla denies the allegations contained in Paragraph 42 of Plaintiffs' Complaint. McCalla further denies that Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint.

## COUNT IV

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

43.

McCalla hereby incorporates Paragraphs 1-42 of this Answer and Affirmative Defenses by reference as if fully set forth herein.

44.

In response to Paragraph 44 of Plaintiffs' Complaint, McCalla states that this Paragraph sets forth a legal conclusion to which no response is necessary. To the extent a response is deemed required, this Paragraph is denied. Responding further, McCalla denies breaching any alleged duty of good faith and fair dealing which may or may not have been owed to Plaintiffs by McCalla.

45.

McCalla denies the allegations contained in Paragraph 45 of Plaintiffs' Complaint.

46.

McCalla denies the allegations contained in Paragraph 46 of Plaintiffs' Complaint. McCalla further denies that Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint.

## COUNT V

## DECLARATORY JUDGMENT

48.

McCalla hereby incorporates Paragraphs 1-47 of this Answer and Affirmative Defenses by reference as if fully set forth herein.

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Answer of McCalla Raymer, LLC

49.

McCalla denies the allegations contained in Paragraph 49 of Plaintiffs' Complaint.

50.

In response to Paragraph 50 of Plaintiffs' Complaint, McCalla states that the foreclosure sale of the subject real property occurred on November 6, 2012 and that McCalla was subsequently retained by co-defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") to effectuate dispossessory proceedings with respect to the subject real property, which dispossessory proceedings have been filed in the Magistrate Court of Murray County, Georgia and are presently ongoing. McCalla denies the remaining allegations contained in Paragraph 50 of Plaintiffs' Complaint.

51.

McCalla denies the allegations contained in Paragraph 51 of Plaintiffs' Complaint.

52.

McCalla denies the allegations contained in Paragraph 52 of Plaintiffs' Complaint.

53.

McCalla denies the allegations contained in Paragraph 53 of Plaintiffs' Complaint. McCalla further denies that Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint.

## COUNT VI

## ATTORNEY'S FEES AND REASONABLE COSTS OF LITIGATION

54.

McCalla hereby incorporates Paragraphs 1-53 of this Answer and Affirmative Defenses by reference as if fully set forth herein.

55.

McCalla denies the allegations contained in Paragraph 55 of Plaintiffs' Complaint.

56.

McCalla denies the allegations contained in Paragraph 56 of Plaintiffs' Complaint. McCalla further denies Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint.

## RESPONSE TO PLAINTIFFS' "WHEREFORE" PARAGRAPH

McCalla denies any and all allegations contained in Plaintiffs' "Wherefore" paragraph and further denies that Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint.

## GENERAL DENIAL AND RESERVATION OF RIGHTS

McCalla denies all other allegations contained within Plaintiffs' Complaint that are not specifically admitted herein and further denies that Plaintiffs are entitled to any relief from McCalla based on the allegations contained in the Complaint. McCalla expressly reserves the right to amend its answer and affirmative defenses should any supplemental facts and/or further investigation reveal information not presently known to McCalla.

WHEREFORE, having fully responded to each and every allegation contained in Plaintiffs' Complaint, McCalla respectfully prays that this Court will:

(a)     Dismiss Plaintiffs' Complaint with prejudice;

(b)     Assess costs and attorneys' fees incurred by McCalla in defending this action against Plaintiffs; and

(c)     Grant McCalla such other and further relief as this Court deems just and proper.

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Answer of McCalla Raymer, LLC

Respectfully submitted, this _17th_ day of January, 2013.

**MCCALLA RAYMER, LLC**

J. Thomas Howell
Georgia Bar No. 594902
Steven J. Flynn
Georgia Bar No. 313040
Kimberly A. Wright
Georgia Bar No. 510370
*Counsel for Defendant McCalla Raymer, LLC*

Six Concourse Parkway, Suite 2800
Atlanta, Georgia 30328
(678) 281-6440 - Direct
(678) 281-6500 - Main
(866) 870-1445 - Fax
sjf@mccallaraymer.com



*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Answer of McCalla Raymer, LLC

## CERTIFICATE OF SERVICE

This is to certify that on this date the undersigned served a copy of the within and foregoing DEFENDANT MCCALLA RAYMER, LLC'S VERIFIED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' VERIFIED COMPLAINT by depositing a true and accurate copy of the same in the United States Mail in an envelope with adequate postage affixed, addressed as follows:

> W. Anthony Collins, Jr.
> Smith and Collins, Attorneys, LLC
> The Blaska Law Firm
> 8565 Dunwoody Place, Suite B
> Atlanta, Georgia 30350
> *Counsel for Plaintiffs*

This ___17th___ day of January, 2013.

_____
Steven J. Flynn
Georgia Bar No. 313040
*Counsel for Defendant McCalla Raymer, LLC*

Six Concourse Parkway, Suite 2800
Atlanta, Georgia 30328
(678) 281-6440 - Direct
(678) 281-6500 - Main
(866) 870-1445 - Fax
sjf@mccallaraymer.com

AMY LANGFORD, AS THE      :
ADMINISTRATOR OF THE ESTATE    :
OF WYATT E. LANGFORD AND     :
AMY LANGFORD, INDIVIDUALLY,    :
                           :
      Plaintiff,              :      Civil Action File No.:
                           :      12-CI-819-M
                           :
JPMORGAN CHASE BANK, MCCALLA :
RAYMER, LLC, FEDERAL HOME    :
LOAN MORTGAGE CORPORATION,   :
                           :
      Defendants.           :

---

## DEFENDANT MCCALLA RAYMER, LLC'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW, Defendant McCalla Raymer, LLC ("McCalla") or ("Defendant") and, pursuant to O.C.G.A. § 9-11-12(b)(6), hereby files this its Motion to Dismiss the "Verified Complaint" (the "Complaint") filed by Amy Langford, as the Administrator of the Estate of Wyatt E. Langford, and Amy Langford, individually (collectively, the "Plaintiffs") and its incorporated Memorandum of Law in Support Thereof (the "Motion to Dismiss"), respectfully showing this Honorable Court as follows:

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The instant case arises out of and concerns the November 6, 2012 foreclosure sale of the real property located at 571 Parson Road, Chatsworth, Georgia 30705 (the "Property"). See Pl. Compl. ¶¶ 6, 24. On or about July 12, 2007, Wyatt Eddie Langford and Judy Dianne Langford obtained a loan from JPMorgan Chase Bank, N.A. ("JPMorgan") in the principal amount of $84,000.00, plus interest (the "Loan"), for the purpose of "build[ing] a garage near their residence that would allow Wyatt to perform freelance work as an auto mechanic." See Pl.

Compl. ¶ 8. In order to secure repayment of the Loan, Plaintiff executed a Security Deed conveying legal title to the Property to Chase, which Security Deed was recorded on July 27, 2007 at Deed Book 647, Page 559 of the Murray County, Georgia real property records (the "Security Deed"). A true and correct copy of the Security Deed is attached hereto as Exhibit A and is incorporated herein by this reference.[1]

On August 18, 2009, Judith Langford suddenly and unexpectedly passed away, resulting in a substantial decrease in Wyatt Langford's household income. See Pl. Compl. ¶ 10. In early 2010, Wyatt Langford "contacted [] Chase and inquire[d] about a loan modification." See Pl. Compl. ¶ 11. Wyatt Langford proceeded to fill out and send a modification package to Chase. See Pl. Compl. ¶ 11. Over the course of the next two (2) years, Wyatt Langford communicated with Chase "on a monthly or weekly basis" regarding the modification of the Loan. See Pl. Compl. ¶ 12. During this time did not at any point indicate to Wyatt Langford that he would not qualify for a loan modification. See Pl. Compl. ¶ 12. Chase also "instructed Wyatt Langford that he did not have to make payment on the [L]oan during the modification period of his mortgage due to his unique hardship, i.e., the death of his wife." See Pl. Compl. ¶ 12.

Wyatt Langford thereafter "began to suffer depression and anxiety issues" based upon "the fact that [] Chase continually told him that he qualified for a mortgage modification, but then refused to execute the modification." See Pl. Compl. ¶ 13. Wyatt Langford also "began to

---

[1] The Court is permitted to take judicial notice of documents filed in this Court. See Petkas v. Grizzard, 252 Ga. 104, 108, 312 S.E.2d 107, 110 (1984). See also NationsBank, N.A. (South) v. Tucker, 231 Ga. App. 622, 623, 500 S.E.2d 378, 381 (1998) ("The role of judicial notice is to eliminate formal proof as to: (1) 'matters of which the general public has knowledge;' (2) 'facts which are readily ascertainable by reference to some reliable source, and are beyond dispute'; and (3) 'matter which are within the special province of the judge.'" (citing Green, Ga. Law of Evidence (4th Ed.), § 4)).

consume alcohol in excess of his normal consumption levels due to the actions of [] Chase" pertaining to Wyatt Langford's efforts to obtain a modification of the Loan. See Pl. Compl. ¶ 13. Wyatt Langford also "sought medical treatment for his depression, anxiety and increased use of alcohol," which Wyatt Langford attributed to the actions of Chase. See Pl. Compl. ¶ 14.

Pursuant to Wyatt Langford's default on his obligations owed under the Loan and Security Deed, and by reason of that default, the lender accelerated the debt owed by Wyatt Langford and retained McCalla, a law firm employing attorneys licensed to practice law in the State of Georgia, to initiate non-judicial foreclosure proceedings against the Property. In "January or February of 2012," Wyatt Langford received a foreclosure notice for the Property and thereafter contacted Chase to "inquire[] as to why he had been sent this notice." See Pl. Compl. ¶ 15. Wyatt Langford was informed by Chase that the notice "was a mistake" and that Chase "would cancel the foreclosure sale" of the Property. See Pl. Compl. ¶ 15. The Property was thereafter scheduled for foreclosure "at least three times from January 2012 to July 2012," and each time Wyatt Langford communicated with Chase after receiving the foreclosure notice(s) and the foreclosure sale(s) was (were) cancelled by Chase. See Pl. Compl. ¶ 16.

Wyatt Langford suffered a stroke on August 13, 2012 and passed away as a result of the stroke. See Pl. Compl. ¶ 17. Wyatt Langford's sole heir, Amy Langford "immediately began communicating with Chase regarding the death of her father and the retention of the" Property. See Pl. Compl. ¶ 18. After speaking with Amy Langford, "Chase agreed that they would postpone any foreclosure [of the Property] until letters of administration had been issued" for Wyatt Langford's estate. See Pl. Compl. ¶ 18. "During this time Chase continued to send correspondence to 'Wyatt and Judith Langford' despite multiple notifications that both were

3

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

deceased." See Pl. Compl. ¶ 18.

Amy Langford received a notice of foreclosure for the Property from McCalla, acting as foreclosure counsel for Chase, in "late September 2012" (the "Notice of Foreclosure Sale"). See Pl. Compl. ¶ 19. The Notice of Foreclosure Sale stated, in pertinent part, as follows:

> The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is:
>
> JPMorgan Chase Bank, National Association
> 3415 Vision Drive Columbus, OH 43219
> 800-446-8939

See Pl. Compl. ¶ 19. After receiving the Notice of Foreclosure Sale, Amy Langford "engaged the Guardian Law Group ('Guardian') on October 17, 2012 [] to attempt to negotiate with [] Chase" regarding modification of the Loan. See Pl. Compl. ¶ 20.

Letters of administration for the Estate of Wyatt Langford were issued to Amy Langford on October 29, 2012 and were "immediately provided to [] Chase." See Pl. Compl. ¶ 21. After these letters of administration were provided to Chase by Amy Langford "Chase again stated that they were going to postpone the foreclosure and provide a modification to [Amy] Langford due to the fact that both of her parents, the original mortgagees, were now deceased." See Pl. Compl. ¶ 21. The Guardian Law Group also contacted McCalla, who "stated that the foreclosure would be postponed and that [] Chase had received all necessary paperwork." See Pl. Compl. ¶ 21.

On November 5, 2012, Chase and McCalla "both assured Plaintiff that the sale would likely be postponed" and instructed Amy Langford "to call back on the day of the foreclosure sale in order to confirm" the postponement of the sale. See Pl. Compl. ¶ 23. On November 6, 2012, the Property was sold under power of sale and purchased by Chase, as the high bidder at sale. See Pl. Compl. ¶ 24. The foreclosure sale of the Property was made a matter of public

4

record by the filing of a Deed Under Power recorded on December 7, 2012, at Deed Book 775, Page 82, in the Murray County, Georgia real property records (the "Deed Under Power"). A true and correct copy of the Deed Under Power is attached hereto as Exhibit B and is incorporated herein by this reference.[2] Also on November 6, 2012, JPMorgan conveyed the Property to Federal Home Loan Mortgage Corporation ("Freddie Mac"), as evidenced by a Special Warranty Deed recorded on December 7, 2012, at Deed Book 775, Page 85, in the Murray County, Georgia real property records (the "Special Warranty Deed"). A true and correct copy of the Special Warranty Deed is attached hereto as Exhibit C and is incorporated herein by this reference.[3]

Following the November 6, 2012 foreclosure sale of the Property, "Plaintiffs contacted Freddie Mac regarding the [L]oan" and were told by Freddie Mac that it "would launch an investigation into this matter and seek to resolve it." See Pl. Compl. ¶ 25. "Chase continues to send large amounts of correspondence to Wyatt Langford promising to modify his mortgage." See Pl. Compl. ¶ 28. Freddie Mac has initiated dispossessory proceedings respecting the Property, seeking to evict Plaintiffs from the Property. See Pl. Compl. ¶ 27.

On December 17, 2012, Plaintiffs, proceeding through counsel, filed their Complaint against Chase, McCalla, and Freddie Mac in this Court. See generally Pl. Compl. Plaintiff's Complaint asserts the following claims: (1) wrongful foreclosure (seeking to set aside the November 6, 2012 foreclosure sale of the Property, monetary damages, and injunctive relief pertaining to any dispossessory activity respecting the Property); (2) intentional infliction of emotional distress; (3) fraud; (4) breach of the duty of good faith and fair dealing; (5) declaratory

_____

[2] See Note 1, *supra.*
[3] See Note 1, *supra.*

*Langford v. JPMorgan Chase Bank, et al.;* case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

judgment; and (6) recovery of attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11. See generally Pl. Compl. McCalla now moves the Court to dismiss Plaintiff's Complaint as to McCalla in its entirety as a matter of law and files contemporaneously herewith its Answer and Affirmative Defenses.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. The Standard for Relief

Under O.C.G.A. § 9-11-12(b)(6), a complaint must be dismissed if it, "[f]ail[s] to state a claim upon which relief can be granted." Id. When a complaint fails to state a claim upon which relief may be granted, the Court should dismiss the complaint on the merits. Walker County v. Tri-State Crematory, 284 Ga. App. 34, 34, 643 S.E.2d 324, 326 (2007) (citing O.C.G.A. § 9-11-12(b)(6)). An O.C.G.A. § 9-11-12(b)(6) motion should be granted when the plaintiff's complaint does not state a claim, or where the facts alleged show that plaintiff may not recover. Masey v. Perkerson, 129 Ga. App. 895, 896, 201 S.E.2d 830, 831 (1973). While "notice pleading" requires only a short and plain statement of the claim, "a complaint must give a defendant notice of the claim in terms sufficiently clear to enable him to frame a responsive pleading thereto." Patrick v. Verizon Directories Corp., 284 Ga. App. 123, 124, 643 S.E.2d 251, 252 (2007) (internal quotation marks omitted).

Although it is not necessary that the Complaint plead "a claim in an ideal manner," plaintiffs must still give defendants "fair notice of the claim and a general indication of the type of litigation involved." Lathem v. Hestley, 270 Ga. 849, 850, 514 S.E.2d 440, 441 (1999). The granting of a motion to dismiss does not require this Court to make findings of fact or conclusions of law. Carole Lyden Smith Enters. Inc. v. Mathew, 193 Ga. App. 320, 320, 387

S.E.2d 577, 578 (1989). In evaluating a motion to dismiss for failure to state a claim, the critical question is whether, under the assumed set of facts, a right to some form of legal relief would exist. Allied Asphalt Co. v. Cumbie, 134 Ga. App. 960, 962, 216 S.E.2d 659, 660 (1975).

### B. Plaintiff has failed to state a claim for relief against McCalla

#### 1. Plaintiff fails to state a claim against McCalla for wrongful foreclosure

Under Georgia law, in order to establish a claim for wrongful foreclosure, a plaintiff must demonstrate: (1) "a legal duty owed to it by the foreclosing party;" (2) "a breach of that duty;" (3) "a causal connection between the breach of that duty and the injury it sustained;" and (4) "damages." Heritage Creek Development Corp. v. Colonial Bank, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004). As a general rule, a foreclosing party's legal duties are fairly limited: "In exercising a power of sale, the foreclosing party is required only to advertise and sell the property in accordance with the terms of the instrument and to conduct the sale in good faith." Rapps v. Cooke, 246 Ga. App. 251, 253, 540 S.E.2d 241, 243 (2000). Additionally, a law firm retained by a foreclosing party cannot be liable for a claim of wrongful foreclosure so long as the foreclosure sale is conducted in accordance with Georgia law. See McCarter, 247 Ga. App. at 132, 543 S.E.2d at 758 (holding that "violation of the [foreclosure] statute is necessary to constitute a wrongful foreclosure").

Plaintiffs' wrongful foreclosure claim, with respect to McCalla, appears to be predicated upon Plaintiffs' contention that the Notice of Foreclosure Sale letter provided to Wyatt and Judith Langford by McCalla, on behalf of its client, Chase, in advance of the November 6, 2012 foreclosure sale of the Property "failed to disclose the name, address and phone number of the entities that had the final authority to renegotiate, modify or otherwise alter the terms of the

7

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

mortgage note," purportedly in violation of O.C.G.A. § 44-14-162.2(a). <u>See</u> Pl. Compl. ¶¶ 30,

31. The Notice of Foreclosure Sale provided, in pertinent part, as follows:

> The entity that has full authority to negotiate, amend, and modify all terms of the
> mortgage with the debtor is:
>
> > JPMorgan Chase Bank, National Association
> > 3415 Vision Drive Columbus, OH 43219
> > 800-446-8939

<u>See</u> Pl. Compl. ¶ 19. Plaintiffs contend that this information contained in the Notice of

Foreclosure Sale was "factually incorrect," as Plaintiffs assert that "the only party that had the

authority to make such a decision was Defendant Freddie Mac." <u>See</u> Pl. Compl. ¶ 31. Plaintiffs

further contend that this alleged deficiency in the Notice of Foreclosure Sale "caused severe

damages to Plaintiffs, and threatens to cause additional harm in the form of evicting Plaitniffs

from their ancestral home during the holiday season." <u>See</u> Pl. Compl. ¶ 32.[4]

In <u>TKW Partners, LLC v. Archer Capital Fund, L.P.</u>, 302 Ga. App. 443, 691 S.E.2d 300

(2010), the Georgia Court of Appeals was asked to determine the legal sufficiency under

O.C.G.A. § 44-14-162.2(a) of a pre-foreclosure notice sent by a lender to a debtor in connection

with a post-foreclosure confirmation proceeding. The pre-foreclosure notice letter sent to the

debtor included the name, address, and telephone number of the lender's attorney, but did not

state that the attorney "or any other person or entity had 'full authority to negotiate, amend, and

modify all terms of the mortgage.'" <u>See</u> <u>id.</u> at 445, 691 S.E.2d at 303. The lender's attorney

testified that there was no single individual affiliated with the lender "with full authority to

modify the loan because 'it would be a group decision...there's not a magic name...there's not

---

[4] The hearing on Freddie Mac's request for a writ of possession to the Property in the Magistrate
Court of Murray County has been continued until January 24, 2013.

one individual.'" Id. at 445, 691 S.E.2d at 303. The pre-foreclosure notice did not state that the lender's attorney or any other person or entity had "full authority to negotiate, amend, and modify all terms of the mortgage.'" See id.

The debtors in TKW Partners contended that because the attorney identified in the pre-foreclosure notice "did not have full authority to negotiate, amend, and modify the loan," the lender's pre-foreclosure notice was deficient under O.C.G.A. §44-14-162.2(a). See id. The debtors also contended that "the notice's failure to expressly identify any entity or individual as having such full authority rendered the notice ineffective." See id. at 446, 691 S.E.2d at 303.

In holding the pre-foreclosure notice sent to the debtors sufficient under O.C.G.A. § 44-14-162.2(a), the Georgia Court of Appeals stated that "O.C.G.A. § 44-14-162 does not require the individual or entity be expressly identified as having 'full authority to negotiate, amend, and modify all terms of the mortgage,' and we cannot conclude that [the lender's] notice was legally deficient for failure to do so." Id. The TKW Partners court went on to hold as follows:

> Although [the lender's attorney] lacked plenary authority to modify the loan, the statute contemplates that the notice may provide contact information for the "entity" with full modification authority. The notice identifies Archer as the lender, and the trial court found that "a person of reasonable intelligence would have construed that [the lender's attorney] was the proper **agent** for [the lender] in this case." Thus, [the debtor] and her attorney, who was also notified, were apprised of the appropriate contact information for [the lender] if [the debtor] wished to pursue a modification of the security deed. We find that the notice **substantially complied** with the requirements of OCGA § 44–14–162.2, and the trial court did not err in finding the notice legally sufficient for purposes of confirming the sale.

Id. (emphasis supplied).

In Stowers v. Branch Banking & Trust Co., 317 Ga. App. 893, 731 S.E.2d 367(2012),[5] the Georgia Court of Appeals upheld the "substantial compliance" standard enunciated in TKW Partners for the "full authority" prong of O.C.G.A. § 44-14-162.2(a), where the foreclosure notice sent to the borrower identified the lender's attorney as having "full authority to negotiate, amend, and modify all terms of the mortgage" based upon the fact that the lender's attorney "was authorized to receive communications from the debtor, to convey them to the bank, to make recommendations, and to convey the bank's position to the debtor." Id., at 895, 731 S.E.2d at 369-70.[6]

In the instant case, Plaintiff contends that the November of Foreclosure sale provided to Wyatt and Judith Langford failed to comply with the mandates of O.C.G.A. § 44-14-162.2(a).

---

[5] A petition for certiorari from the Stowers decision is currently pending before the Georgia Supreme Court.

[6] On September 7, 2012, the Honorable Julie E. Carnes, Chief Judge of the United States District Court for the Northern District of Georgia, in the case of You v. JPMorgan Chase Bank, N.A., No. 1:12-CV-00202-JEC, 2012 WL 3904366 (N.D. Ga. Sept. 7, 2012), certified three (3) questions to the Georgia Supreme Court, asking the Georgia Supreme Court to provide guidance and clarity on the following legal questions pertaining to Georgia foreclosure law:

(1) Can the holder of a security deed be considered to be a secured creditor, such that the deed holder can initiate foreclosure proceedings on residential property even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed?

(2) Does O.C.G.A. § 44-14-162.2(a) require that the secured creditor be identified in the noticed described by that statute?

(3) If the answer to the preceding question is "yes," (a) will substantial compliance with this requirement suffice and (b) did defendant Chase substantially comply in the notice it provides in this case?

Id., No. 1:12-CV-00202-JEC, at Doc. 16, p. 2 of 3. These certified questions were docketed in the Georgia Supreme Court on September 13, 2012, case number S13Q0040. Oral argument in this case took place on January 7, 2013 and a decision on these certified questions is forthcoming.

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

See Pl. Compl. ¶¶ 19, 31. However, as stated in TKW Partners, O.C.G.A. § 44-14-162 does not require the individual or entity be expressly identified as having 'full authority to negotiate, amend, and modify all terms of the mortgage,' and we cannot conclude that [the lender's] notice was legally deficient for failure to do so." See TKW Partners, 302 Ga. App. at 446, 691 S.E.2d at 303. In other words, the Notice of Foreclosure Sale was not required to "label" any entity as having "full authority to negotiate, amend, and modify" the terms of the Loan; rather the Notice of Foreclosure Sale complied with O.C.G.A. § 44-14-162.2(a) so long as contact information was provided for an entity that Plaintiffs could contact if they "wished to pursue modification of the security deed." See id. at 446, 691 S.E.2d at 303. Clearly, the Notice of Foreclosure Sale afforded Plaintiffs with sufficient information to pursue modification of the Loan repeatedly were in communication with Chase regarding potential modification of the Loan for nearly two (2) years prior to the November 6, 2012 foreclosure sale of the Property. See, e.g., Pl. Compl. ¶ 11 ("Wyatt Langford contacted Defendant Chase and inquire[d] about a loan modification."); ¶ 12 ("Over the course of the next two years, Wyatt Langford communicated with Defendant Chase on a monthly or weekly basis."); ¶ 20 ("To this end, [Amy] Langford engaged the Guardian Law Group ('Guardian') on October 17, 2012, to attempt to negotiate with Defendant Chase."); ¶ 22 ("Langford continued to contact Defendants Chase and McCalla regarding postponement of the foreclosure sale"). As such, even assuming *arguendo* that the Foreclosure Notice provided to Plaintiff in September 2012 failed to comply with O.C.G.A. §44-14-162.2(a),[7] Plaintiffs cannot, as a matter of law, demonstrate that such non-compliance resulted in damages to Plaintiffs, based upon Plaintiffs' admitted contact with Chase and attempts to modify

---

[7] McCalla contends that the Notice of Foreclosure Sale fully complied with O.C.G.A. § 44-14-162.2(a) in this case.

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

the terms of the Loan with Chase after receiving the Notice of Foreclosure Sale. See id. As such, this claim is subject to summary dismissal. See Calhoun First Nat. Bank v. Dickens, 264 Ga. 285, 286, 443 S.E.2d 837, 839 (1994) ("The bank's failure to provide proper notice constituted a breach of the duty to fairly exercise the power of sale created by § 23-2-114. Having established duty and breach, however, Mrs. Dickens still needed to show a causal connection between the lack of notice and the alleged injury.").[8]

### 2. Plaintiff has failed to set forth a claim for intentional infliction of emotional distress

In order to prevail on a claim for intentional infliction of emotional distress, Plaintiffs must allege and prove that the alleged conduct of McCalla: (1) was intentional or reckless; (2) was extreme and outrageous; (3) that the conduct caused Plaintiff emotional distress; and (4) that Plaintiff's emotional harm was severe. Kirkland v Earth Fare Inc., 289 Ga. App. 819, 822, 658 S.E.2d 433, 437 (2008). "All four of these elements must be present in order for an action for intentional infliction of emotional distress to lie." Id. (internal citation and quotations omitted). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 822-823, 658 S.E.2d at 437. Whether the alleged conduct is sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress is a question of law for the trial court. Id. at 823, 658 S.E.2d at 437. Outrageous

---

[8] Plaintiffs' derivative request for punitive damages from McCalla in connection with this claim must be dismissed as a matter of law based upon Plaintiffs' failure to plead a viable substantive claim against McCalla. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1304 (11th Cir. 2009) ("[a] punitive damages claim is derivative of a plaintiff's tort claim, and where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required") (citing Boeing Co. v. Blane Int'l Group, 276 Ga. App. 672, 676, 624 S.E.2d 227, 231 (2005)).

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

conduct requires more than "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." Id.

McCalla's alleged actions complained of by Plaintiffs do not, as a matter of law, constitute "outrageous conduct" that would support Plaintiff's claim for intentional infliction of emotional distress. Georgia law mandates that the complained of conduct be outrageous and outside the pale of normal everyday activities in order to sustain a claim for intentional infliction of emotional distress. See Frank v. Fleet Finance, Inc. of Georgia, 238 Ga.App. 316, 318, 518 S.E.2d 717, 719-20 (1999). In Blue View Corp. v. Bell, 298 Ga. App. 277, 679 S.E.2d 739 (2009), the lender "initiated foreclosure proceedings, but later withdrew them." See id. at 279, 679 S.E.2d at 742. The Georgia Court of Appeals found, as a matter of law, that the actions of the lender in merely (and, according to the plaintiff borrowers, wrongfully) initiating foreclosure proceedings against the property did not support a claim for intentional infliction of emotional distress under Georgia law. See id. at 280, 679 S.E.2d at 742. The initiation of a foreclosure by way of a non-judicial proceeding is expressly authorized by Georgia law. See O.C.G.A. 44-14-160 et. seq. Far from constituting outrageous behavior, the foreclosure at issue in this matter is authorized not only by Georgia law, but also by the express terms of the Security Deed. See Dodson v. Farm & Home Sav. Ass'n, 208 Ga.App. 568, 569, 430 S.E.2d 880, 881 (1993).

In the instant case, Plaintiffs appear to contend McCalla made representations to Amy Langford (or her representatives) that the November 6, 2012 foreclosure sale of the Property would be postponed and that such promises constitute "wanton, willful malicious" behavior that is "outside the bounds of normal society." See Pl. Compl. ¶ 35. First, Plaintiffs' allegations concede that the representations on this point allegedly made by McCalla were equivocal, not

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

definite, in nature. See Pl. Compl. ¶ 22 ("Both Defendants continued to assure Plaintiff that the sale would be postponed, *although they noted that they were waiting for final approval for (sic) some higher authority.*" (emphasis supplied)); Pl. Compl. ¶ 23 ("On the day before the scheduled foreclosure sale, November 5, 2012, Defendants again contacted Defendants Chase and McCalla, who both assured Plaintiff that the sale *would likely be postponed...* (emphasis supplied)). As such, these alleged false representations made by McCalla cannot, as a matter of law, constitute "extreme and outrageous" conduct sufficient to support a claim for intentional infliction of emotional distress under Georgia law. See Blue View Corp., 298 Ga. App. at 280, 679 S.E.2d at 742. As Plaintiffs have failed to allege facts sufficient to support a claim for intentional infliction of emotional distress under Georgia law, this claim should be dismissed. See id. (dismissing intentional infliction of emotional distress claim where plaintiff failed to plead facts sufficient to support the claim).[9]

### 3. Plaintiff fails to state a claim against McCalla for fraud

Under Georgia law, in order to establish a claim for fraud, a plaintiff must satisfy the following elements: "(1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." Johnson v. GAPVT Motors, Inc., 292 Ga. App. 79, 82, 663 S.E.2d 779, 783 (2008). "[A] promise, even a false promise, to perform an act in the future is not a false pretense or false representation, and does not constitute the basis for an action for fraud.'" Hornsby v. First Nat. Bank of Atlanta, 154 Ga. App. 155, 157 267 S.E.2d 780, 783 (1980) (quoting Turpin v. North Am. Acceptance Corp., 119 Ga. App. 212,

---

[9] See Note 8, *supra.*

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

216, 166 S.E.2d 588, 591 (1969)). An alleged failure to abide by the terms of a purported agreement cannot form the basis for a claim of fraud when such agreement is unsupported by consideration. See Phillips v. Atlantic Bank & Trust Company, 168 Ga. App. 590, 591, 309 S.E.2d 814, 814 (1983). "The general rule is that fraud cannot be predicated upon statements which are promissory in nature as to future acts." Hornsby, 154 Ga. App. at 157, 267 S.E.2d at 782 (quoting Bonner v. Wachovia Mtg. Co., 142 Ga. App. 748, 749-50, 236 S.E.2d 877, 879 (1977)). "Although fraud can be predicated on a misrepresentation as to a future event where the defendant knows that the future event will not take place, fraud cannot be predicated on a promise which is unenforceable at the time it is made." Willis v. Rabun County Bank, 161 Ga. App. 151, 153, 291 S.E.2d 52, 54 (1982) (quoting Beasley v. Ponder, 143 Ga. App. 810, 811, 240 S.E.2d 111, 111 (1977)). Lastly, under O.C.G.A. § 9-11-9(b), "[i]n all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Id.

In Phillips, 168 Ga. App. 590, 309 S.E.2d 814 (1983), a debtor brought suit against his lender for an alleged fraud and breach of an oral contract in connection with the foreclosure of real property formerly owned by the debtor upon which the bank had procured a security interest by way of a security deed. Id. at 590, 309 S.E.2d at 814. The debtor did not dispute that he was in default under the terms of his promissory note with the bank, nor did he dispute that the foreclosure sale was conducted in accordance with the terms of the security deed held by the bank. See id. at 590, 309 S.E.2d at 813, 814. The debtor claimed that prior to the foreclosure sale of the property, the bank orally assured him that: (1) the bank would procure long-term financing for the property, and (2) that, after the property had been advertised for sale, no

foreclosure sale on the property would take place before the debtor was able to consummate a purchase and sales agreement that he had entered into with a third-party purchaser for the property. See id.

In affirming summary judgment for the bank, the Georgia Court of Appeals held that the "[debtor's] claim of fraud based upon [the bank's] alleged promise to secure long term financing for the property present no actionable cause. '[A] promise, even a false promise, to perform an act in the future is not a false pretense or false representation, and does not constitute the basis for an action for fraud.'" Id. (quoting Hornsby v. First National Bank, 154 Ga. App. 155, 157, 267 S.E.2d 780, 782-83 (1980)). The court went on to hold, "[debtor's] alleged 'agreement not to foreclose also constitutes nothing more than an unenforceable, broken promise, unsupported by consideration. Consequently, [debtor's] claim for fraud based on this alleged promise must fail." Id. at 591, 309 S.E.2d at 814; see also Caselli v. PHH Mortg. Corp., No. 1:11-CV-2418-RWS, 2012 WL 124027, at *8 (N.D. Ga. Jan. 13, 2012) ("Plaintiff's fraud claim is grounded on the Defendant's statements that it was 'going to agree' to a modification. But the Court finds that the alleged statements are not actionable because they were promises to act in the future."). Further, with respect to the debtor's contention that the debtor's submission of a purchase and sales agreement to the bank constituted sufficient consideration in exchange for the bank's promise not to foreclose, the Phillips court held, "[t]he alleged new 'agreement' obligated [the debtor] to do nothing more than he was already obligated to do under the note. 'An agreement on the part of one to do what he is already legally bound to do is not sufficient consideration for the promise of another.'" Phillips, 168 Ga. App. at 591, 309 S.E.2d at 814 (citations omitted). Finally, the court reiterated that "[w]hen a power of sale is exercised, '(a)ll that is required of

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

(the foreclosing party) is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith" and affirmed the trial court's ruling that no fiduciary relationship existed between the bank and debtor such that any additional duties were imposed upon the bank when dealing with the debtor. Id. at 592, 309 S.E.2d at 815 (quoting Kennedy v. Gwinnett Commercial Bank, 155 Ga. App. 327, 330, 270 S.E.2d 867, 871 (1980)).

In the instant case, Plaintiffs' claim for fraud against McCalla is based upon two (2) alleged misrepresentations. First, Plaintiffs' allege that McCalla misrepresented in the Notice of Foreclosure Sale that Chase "had the full authority to negotiate and modify the mortgage that is the subject of this action," when, in fact, Freddie Mac had such authority. See Pl. Compl. ¶ 39(2). As discussed in Section II(B)(1), *supra*, the identification of Chase in the Notice of Foreclosure Sale as having "full authority to negotiate, amend, and modify" the terms of the Loan complied with Georgia foreclosure law, specifically O.C.G.A. §44-14-162.2(a). See Section II(B)(1), *supra*; see also TKW Partners, 302 Ga. App. at 446, 691 S.E.2d at 303; Stowers, 317 Ga. App. at 895, 731 S.E.2d at 369-70. As such, this statement cannot form the basis for Plaintiffs' fraud claim under Georgia law.

Second, Plaintiff contends that McCalla misrepresented to Plaintiffs that the foreclosure sale of the Property "would be stopped and that [Chase] had the full authority to stop the foreclosure proceedings when they did not." See Pl. Compl. ¶ 39(3). However, "'a promise, even a false promise, to perform an act in the future is not a false pretense or false representation, and does not constitute the basis for an action for fraud.'" Phillips, 168 Ga. App. at 590, 309 S.E.2d at 814 (quoting Hornsby, 154 Ga. App. at 157, 267 S.E.2d at 782-83). Moreover,

Plaintiffs have not stated any facts indicating that Plaintiffs provided any consideration in exchange for this alleged promise not to foreclose on the Property and therefore such alleged statements by McCalla cannot form the basis for a claim of fraud under Georgia law. See id. at 591, 309 S.E.2d at 814 ("Appellee's alleged "agreement" not to foreclose also constitutes nothing more than an unenforceable, broken promise, unsupported by consideration. Consequently, appellant's claim of fraud based on this alleged promise must fail."). Plaintiffs' fraud claim against McCalla should be dismissed for failure to state a claim upon which relief may be granted.[10]

### 4. Plaintiff fails to state a claim for breach of the duty of good faith and fair dealing

Plaintiffs' Complaint next alleges that McCalla violated the duty of good faith and fair dealing when dealing with Plaintiffs. See Compl. ¶¶ 43-46. Plaintiffs allege that McCalla (and Chase and Freddie Mac) violated the duty of good faith and fair dealing "by making numerous promises that they never intended to actually fulfill, misrepresenting the party who had the authority to negotiate a modification of the [L]oan, and sending an erroneous and misleading notice of foreclosure…" See Pl. Compl. ¶ 45.

Georgia law does not recognize an independent cause of action based upon an alleged breach of the implied covenant of good faith and fair dealing. See Stuart Enter., Inc. v. Peykan, Inc., 252 Ga. App. 231, 234, 555 S.E.2d 881, 883-84 (2001). Rather, "[t]he implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract." Id. As Plaintiffs have not alleged that McCalla violated any contractual agreement entered into with Plaintiffs, Plaintiffs' independent claim for

_____

[10] See Note 8, *supra*.

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

breach of the covenant of good faith and fair dealing must therefore be dismissed. See id.[11]

### 5. Plaintiff is not entitled to a declaratory judgment against McCalla

Under Georgia law, a declaratory judgment should be issued where a case "of actual controversy" exists. O.C.G.A. § 9-4-2(a). In order to be entitled to a declaratory judgment, a "plaintiff must show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute...." Phoenix Assur. Co. v. Glens Falls Ins. Co., 101 Ga. App. 530, 532-33, 114 S.E.2d 389, 391 (1960) (emphasis added). In other words, "[f]or a controversy to justify the making of a declaration, it must include a right claimed by one party and denied by the other, and not merely a question as to the abstract meaning or validity of a statute." Pangle v. Gossett, 261 Ga. 307, 308, 404 S.E.2d 561, 563 (1991) (citation and quotations omitted).

Here, there simply are no allegations to support a showing of an actual controversy between McCalla and Plaintiff with regard to the Property. See generally Pl. Compl. As previously discussed, Freddie Mac, not McCalla, is not the legal owner of the Property by way of the Special Warranty Deed. See Ex. C. Moreover, Plaintiffs have not alleged that McCalla has at any point asserted a legal interest in the Property. See generally Pl. Compl. Rather, McCalla has at all relevant times served only as foreclosure counsel for Chase and as evictions counsel for Freddie Mac in connection with the dispossessory proceedings initiated with respect to the Property. Thus, given Plaintiff's failure to set forth the facts and circumstances demonstrating the existence of an actual controversy between McCalla and Plaintiff, Plaintiff is not entitled to a

---

[11] See Note 8, *supra*. Moreover, punitive damages are not recoverable on breach of contract claims. See Marshall v. King & Morgenstern, 272 Ga. App. 515, 522, 613 S.E.2d 7, 13 (2005) ("It is well settled that punitive damages are not available in breach of contract claims" (quoting Cline v. Lee, 260 Ga. App. 164, 169-170(2), 581 S.E.2d 558, 563 (2003)).

declaratory judgment against McCalla and this claim for declaratory judgment should be dismissed as to McCalla. See Phoenix Assur. Co., 101 Ga. App. at 532-33, 114 S.E.2d at 391.

      6.  Plaintiffs' claim for recovery of litigation expenses should be dismissed because Plaintiffs have failed to state a viable claim for relief against McCalla

Plaintiffs' next claim, for recovery of attorneys' fees and expenses of litigation, alleges that McCalla has "acted in bad faith, [has] been stubbornly litigious, and [has] caused Plaintiffs unnecessary trouble and expenses." See Pl. Compl. ¶ 55. Based upon this allegation, Plaintiffs seek recovery of their attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11. See Pl. Compl. ¶ 56. However, as each of Plaintiffs' substantive claims against McCalla fail as a matter of law, as shown herein, supra, this derivative claim for relief is subject to summary dismissal as well. See Davis v. Johnson, 280 Ga. App. 318, 320, 634 S.E.2d 108, 110 (2006) ("[a]ttorney fees and expenses of litigation under O.C.G.A. § 13-6-11...are ancillary and recoverable only where other elements of damage are recoverable on the underlying claim.'") (quoting Freeman v. Wheeler, 277 Ga. App. 753, 757, 627 S.E.2d 86, 90 (2006)). McCalla respectfully requests that this derivative claim be dismissed for failure to state a claim.

## III.  CONCLUSION

In light of the foregoing, dismissal of Plaintiffs' Complaint as to McCalla is wholly appropriate. Plaintiffs' Complaint fails to state a viable legal claim against McCalla and, thus, Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim against McCalla upon which relief may be granted. Based on the facts, arguments and citations of law contained in its motion and supporting brief, McCalla respectfully prays that this Court will:

    (a) Grant McCalla's Motion to Dismiss and dismiss the Complaint as to McCalla with prejudice;

*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

(b) Deny Plaintiffs the relief requested against McCalla in the Complaint;

(c) Discharge McCalla with all costs and that the attorneys' fees incurred by McCalla in

defending this action be cast against Plaintiffs; and

(d) Grant McCalla such other relief as this Court deems just and proper.

Respectfully submitted, this /7ᵗ day of January, 2013.

MCCALLA RAYMER, LLC

J. Thomas Howell
Georgia Bar No. 594902
Steven J. Flynn
Georgia Bar No. 313040
Kimberly A. Wright
Georgia Bar No. 510370
*Counsel for Defendant McCalla Raymer, LLC*

Six Concourse Parkway, Suite 2800
Atlanta, Georgia 30328
(678) 281-6440 - Direct
(678) 281-6500 - Main
(866) 870-1445 - Fax
sjf@mccallaraymer.com



*Langford v. JPMorgan Chase Bank, et al.*; case no. 12-CI-819-M
Motion to Dismiss Complaint of Defendant McCalla Raymer, LLC

559

GEORGIA INTANGIBLE TAX
PAID $ _752.00_  67
_Charlotte Keenum_
TAX COMM., MURRAY CO., GA

Return To:
JPMORGAN CHASE BANK, N.A.
1040 OLIVER ROAD
MONROE, LA   71201

ATTENTION:   CUSTODY SERVICES
Prepared By:   MIRANDA MCCALL
1111 Polaris Pkwy
Columbus, OH 43271

MURRAY COUNTY, GEORGIA

Filed _3:10P_ M/ _July 27, 2007_
Recorded _July 27, 2007_
Deed Book _647_ ___ Page _559_
_Laurie Matthews_
Clerk Superior Court

—————— [Space Above This Line For Recording Data] ——————

oxfic-one           SECURITY DEED
        4th25

12053924
1120539243

When recorded mail to:
First American Title Insurance
Lenders Advantage
1100 Superior Avenue, Suite 200
Cleveland, Ohio 44114
ATTN: NSS TEAM

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated      July 12, 2007
together with all Riders to this document.
(B) "Borrower" is   WYATT EDDIE LANGFORD,  MARRIED
                    JUDY DIANNE LANGFORD,  MARRIED

Borrower is the grantor under this Security Instrument.
(C) "Lender" is   JPMORGAN CHASE BANK, N.A.

Lender is a  BANK
organized and existing under the laws of   the U.S.A.

GEORGIA Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011  1/01

   -6(GA) (0005)
Page 1 of 14                  Initials:
VMP MORTGAGE FORMS - (800)521-7291



DEFENDANT'S
EXHIBIT
A

Lender's address is **1111 POLARIS PARKWAY**
**COLUMBUS OH 43240**
Lender is the grantee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **July 12, 2007**
The Note states that Borrower owes Lender
**Eighty-Four Thousand, and 00/100**                                                    **Dollars**
**(U.S. $    84,000.00  )** plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **August 1, 2022**  .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

-6(GA) (0008)                          Page 2 of 14                    Initials:                    Form 3011  1/01

(P) "**Successor In Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the
COUNTY                                    of   MURRAY                              :

       [Type of Recording Jurisdiction]                 [Name of Recording Jurisdiction]


See Attached Legal Description



Parcel ID Number:   0049C076                         which currently has the address of
                    571 PARSON ROAD                             [Street]
                    CHATSWORTH             [City] , Georgia   30705     [Zip Code]
("Property Address");

      TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
      UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
      **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6(GA) (0006)                          Page 4 of 14                          Initials: _____          Form 3011   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: _____

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

566

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(GA) (0005)　　　　　　Page 9 of 16　　　　Initials:　　　　Form 3011  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6(GA) (0006)                    Page 10 of 14                    Initials: _____                    Form 3011 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6(GA) (0005)     Page 11 of 14     Initials:     Form 3011 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



-6(GA) (0005)                    Page 12 of 14                    Initials:                    Form 3011  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)　　　_____ (Seal)
WYATT EDDIE LANGFORD　　-Borrower　　　　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　_____ (Seal)
JUDY DIANNE LANGFORD　　-Borrower　　　　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　-Borrower

STATE OF GEORGIA,　　　　　　　　　　Murray　　　County ss:
　　Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____　　　　　　　　　　County
Notary Public
State of Georgia

NOTARY
PUBLIC
COBB COUNTY, GA

My Commission Expires
April 12, 2009

-6(GA) (0005)　　　　　　　　Page 14 of 14　　　　　　　Form 3011　1/01

Grantor: WYATT EDDIE LANGFORD
Lender: JPMORGAN CHASE BANK, N.A.
Date of Security Deed: 07/12/07

12053924
1120539243

### WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly: (1) acknowledges the Right to Accelerate the debt and the Power of Attorney given herein to Lender to sell the premises by the Nonjudicial Foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is specifically required to be given under the provisions of said Deed to Secure Debt:(2) Waives any and all rights which Grantor may have under the Fifth and Fourteenth Amendments to the Constitution of the United States, the various provisions of the Constitution for the several states or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provide to Lender, except such notice as is specifically required to be provided in said Deed to Secure Debt:(3) Acknowledges that Grantor has read this Deed and any and all questions regarding the legal effect of said Deed and its Provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this Deed: (4) acknowledges that all waivers of the aforesaid rights of Grantors have been made knowingly, intentionally and willingly by grantor as part of a bargained for loan transaction: (5) agrees that Grantor's right to notice shall be limited to those rights to notice provided by this Deed and no other: and (6) agrees that the provisions hereof are incorporated into and made a part of the Security Deed.

**Read and agreed by Grantor:**

_____ (SEAL)
WYATT EDDIE LANGFORD        Grantor

_____ (SEAL)
JUDY DIANNE LANGFORD        Grantor

_____ (SEAL)
                           Grantor

_____ (SEAL)
                           Grantor

Signed, sealed and delivered in the presence of:

_____
Notary Public

BRIAN WALGH
NOTARY
PUBLIC
COBB COUNTY
My Commission Expires
April 12, 2009

GA Waiver of Borrower Rights
C- 1026 (8/94)

**574**

LENDER: JPMORGAN CHASE BANK, N.A.

12053924
1120539243

## CLOSING ATTORNEY'S AFFIDAVIT

RE: Borrower(s): WYATT EDDIE LANGFORD

JUDY DIANNE LANGFORD

Lender: JPMORGAN CHASE BANK, N.A.

Date: 07/12/07

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's' rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with the explanation of Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation of the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such non-judicial foreclosure.

By _____
Closing Attorney

Sworn and subscribed before me

this the 12 day of Jun, 20

_____
Notary Public

GA Closing Atty Affidavit
C- 1027 (4/98) (replaces 1/98)

*001431*

MURRAY COUNTY, GEORGIA
Filed *9:00A* M *December 7, 2012*
Recorded *December 7, 2012*
Deed Book *775* Page *82*
*Connie Reed*
Clerk of Superior Court

Return To:

Prommis Solutions, LLC
1544 Old Alabama Road
Roswell, GA 30076

STATE OF **Ohio**
COUNTY OF **Franklin**

CROSS INDEX TO DEED
BOOK 647, PAGE 559,
MURRAY COUNTY,
GEORGIA RECORDS

## DEED UNDER POWER

THIS INDENTURE, effective as of the 6th day of November, 2012, by Wyatt Eddie Langford and Judy Dianne Langford (hereinafter collectively referred to as "Borrower"), acting through this duly appointed attorney in fact, JPMorgan Chase Bank, National Association (hereinafter referred to as "Lender"), as Party of the First Part, and JPMorgan Chase Bank, National Association, as Party of the Second Part:

## W I T N E S S E T H :

WHEREAS, Borrower executed and delivered that certain Security Deed given by Wyatt Eddie Langford and Judy Dianne Langford to JPMorgan Chase Bank, National Association, dated July 12, 2007, recorded in Deed Book 647, Page 559, Murray County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of EIGHTY-FOUR THOUSAND AND 0/100 DOLLARS ($84,000.00);

WHEREAS, default in the payment of the required installments under said Note occurred, and by reason of said default, Lender elected, pursuant to the terms of the Security Deed and Note, and declared the entire principal and interest immediately due and payable; and

WHEREAS, said entire indebtedness still being in default, Lender on behalf of Borrower, and according to the terms of said Security Deed, did advertise said property for sale once a week for 4 weeks immediately preceding said sale in a newspaper in Murray County, Georgia, wherein the Sheriff carried his advertisements, namely the Chatsworth Times; and

Page 1      McCalla Raymer, LLC
56412-FT18/ksp
11/06/12



WHEREAS, notice was given in compliance with Georgia Laws 1981, Volume I, Page 834, codified as O.C.G.A. Section 44-14-162.2 and Section 44-14-162.4. The Notice so required was rendered by mailing a copy of the Notice of Sale submitted to the publisher to the "Debtor" (as that term is defined in O.C.G.A. Section 44-14-162.1) at least thirty days prior to the foreclosure sale date on November 6, 2012; and

WHEREAS, Lender did expose said property for sale to the highest bidder for cash on the first Tuesday in November, 2012 within the legal hours of sale at the usual place for conducting Sheriff's sales in Murray County before the Courthouse door, and offered said property for sale at public outcry to the highest bidder for cash when and where the aforesaid Party of the Second Part bid SEVENTY-SIX THOUSAND AND 0/100 DOLLARS ($76,000.00); AND

WHEREAS, the said property was knocked off to the Party of the Second Part for the aforementioned sum of money in cash.

NOW THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, the Party of the First Part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the Party of the Second Part, said party's representatives, heirs, successors and assigns, the following described property:

> All that tract or parcel of land located in Land Lot Number 263 in the 9th District and 3rd Section of Murray County, Georgia, being a portion of Tract Number 12 of Oscar Parson Property as shown on plat prepared by E.M. Smith, Registered Land Surveyor recorded in Plat Book 4, Page 114, Murray County Public Records, and being more particularly described as follows: Beginning on the north side of Dick Long Road at or near the original southwest corner of said Land Lot Number 263: thence running north 79 degrees 22 minutes east with the north line of Dick Long Road 80.6 feet; thence north 77 degrees 51 minutes east with the north line of Dick Long Road 104.2 feet; thence north 35 degrees 54 minutes east with the west line of Dick Long Road 156.3 feet; thence north 5 degrees 28 minutes east and along the west line of Dick Long Road 20 feet; thence north 83 degrees west 260.1 feet to a point on the west line of said Tract Number 12; thence south 4 degrees 27 minutes west 216 feet to the point of beginning.

TOGETHER WITH all and singular the rights, members and appurtenances thereto appertaining; also all the estate, right, title, interest, claim or demand of the Party of the First Part, or said Party's representatives, heirs, successors and assigns, legal, equitable or otherwise, whatsoever, in and to the same.

THIS CONVEYANCE IS SUBJECT TO any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed.

TO HAVE AND TO HOLD the said property and every part thereof unto the said Party of the Second Part, and said party's representatives, heirs, successors and assigns, to said Party's own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as the said Party of the First Part or said Party's representatives, heirs, successors and assigns, did hold and enjoy the same.

IN WITNESS WHEREOF, Lender as Agent and Attorney in Fact for Borrower has hereunto affixed Lender's hand and seal on this, the 19 day of November, 2012.

JPMorgan Chase Bank, National Association

as Attorney in Fact for

Wyatt Eddie Langford and Judy Dianne Langford

By: _JoAnn Johnson_ 11-19-12

Print Name: _JoAnn Johnson_

Title: _Vice President_

By: _Carl W Foulke_ 11-19-12

Print Name: _Carl W Foulke_

Title: _Assistant Secretary_

Signed, sealed and delivered in the presence of:

_signature_ 11-19-12
Witness _David R Farmer_

_signature_ 11-19-12
Notary Public _Tracy N. Rice_

My Commission Expires:

_11-20-12_
(Notary Seal)

**TRACY N. RICE**
Notary Public, State of Ohio
My Commission Expires
November 20, 2012

*001432*

MURRAY COUNTY, GEORGIA

Filed _9:00A_ M _December 7, 2012_
Recorded _December 7, 2012_
Deed Book _775_ Page _85_

_Connie Reed_
Clerk of Superior Court

Return To:
Prommis Solutions, LLC |
1544 Old Alabama Road
Roswell, GA 30076

STATE OF **Ohio**
COUNTY OF    Franklin

## SPECIAL WARRANTY DEED

THIS INDENTURE, effective as of the 6th day of November, 2012, between JPMorgan Chase Bank, National Association, Grantor, and Federal Home Loan Mortgage Corporation, whose address is 5000 Plano Parkway, MS SW, Carrollton, TX 75010, Grantee.

WITNESSETH THAT:

The said Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed, and confirmed, and by these presents does grant, bargain, sell, alien, convey, and confirm unto the Grantee, his successors and assigns, the following described property:

All that tract or parcel of land located in Land Lot Number 263 in the 9th District and 3rd Section of Murray County, Georgia, being a portion of Tract Number 12 of Oscar Parson Property as shown on plat prepared by E.M. Smith, Registered Land Surveyor recorded in Plat Book 4, Page 114, Murray County Public Records, and being more particularly described as follows: Beginning on the north side of Dick Long Road at or near the original southwest corner of said Land Lot Number 263; thence running north 79 degrees 22 minutes east with the north line of Dick Long Road 80.6 feet; thence north 77 degrees 51 minutes east with the north line of Dick Long Road 104.2 feet; thence north 35 degrees 54 minutes east with the west line of Dick Long Road 156.3 feet; thence north 5 degrees 28 minutes east and along the west line of Dick Long Road 20 feet; thence north 83 degrees west 260.1 feet to a point on the west line of said Tract Number 12; thence south 4 degrees 27 minutes west 216 feet to the point of beginning.

Wyatt Eddie Langford                    Page 1          56412-FT18
                                                        MR/ksp  11/6/12



TO HAVE AND TO HOLD, the said property hereinabove described, together with all and singular the rights, members and appurtenances thereunto appertaining to the only proper use, benefit and behoof of the said Grantee, his successors and assigns, in FEE SIMPLE; and the said Grantor specially warrants the title to the said bargained property above described against the lawful claims of all persons claiming by, through and under the Grantor.

IN WITNESS WHEREOF, the Grantor has caused this indenture to be executed in its name and on its behalf under seal by its undersigned officials on this, the 19 day of November, 2012.

JPMorgan Chase Bank, National Association

By: _J@Un Jwhn_ 11-19-12

Print Name: ____JoAnn Johnson____

Title: _Vice President_

By: _Carl Foulk_ 11-19-12

Print Name: **Carl W Foulke**

Title: _Assistant Secretary_

Signed, sealed and delivered in the presence of:

_Gayle R Farmer_ 11-19-12
Witness

_Tracy N. Rice_ 11-19-12
Notary Public

My Commission Expires: 11-20-12

(Notary Seal)

TRACY N. RICE
Notary Public, State of Ohio
My Commission Expires
November 20, 2012

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT MCCALLA RAYMER, LLC'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF has been sent via United States Mail, postage pre-paid, in a properly addressed envelope to:

> W. Anthony Collins, Jr.
> Smith and Collins, Attorneys, LLC
> The Blaska Law Firm
> 8565 Dunwoody Place, Suite B
> Atlanta, Georgia 30350
> *Counsel for Plaintiffs*

This /7K day of January, 2013.

Steven J. Flynn
Georgia Bar No. 313040
*Counsel for Defendant McCalla Raymer, LLC*

Six Concourse Parkway, Suite 2800
Atlanta, Georgia 30328
(678) 281-6440 - Direct
(678) 281-6500 - Main
(866) 870-1445 - Fax
sjf@mccallaraymer.com

