IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

AMY LANGFORD, as the
Administrator of the Estate
of Wyatt E. Langford, and
AMY LANGFORD, individually,

     Plaintiff,

v.

                      CIVIL ACTION FILE
                      NO. 4:13-CV-0016-HLM

JPMORGAN CHASE BANK, et al.,

     Defendants.

## ORDER

This case is before the Court on the Renewed Motion to Dismiss ("Motion to Dismiss") filed by Defendant McCalla Raymer, LLC ("Defendant McCalla") [24] and on the Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") filed by Defendant JPMorgan Chase Bank ("Defendant

AO 72A
(Rev.8/8
2)

Chase") and Defendant Federal Home Loan Mortgage

Corporation ("Defendant Freddie Mac") [25].

## I.    Standard Governing a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the

Court to dismiss a complaint, or portions of a complaint, for

"failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).    When reviewing a motion to

dismiss, the Court must take the allegations of the

complaint as true and must construe those allegations in the

light most favorable to the plaintiff.  Rivell v. Private Health

Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008).

Although the Court is required to accept well-pleaded

facts as true when evaluating a motion to dismiss, it is not

required to accept the plaintiff's legal conclusions.

2

AO 72A

(Rev.8/8

2)

Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).   When evaluating the sufficiency of a plaintiff's complaint, the Court makes reasonable inferences in favor of the plaintiff, but is not required to draw the plaintiff's inference. Id. (quoting Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)).   Similarly, the Court does not accept as true "'unwarranted deductions of fact'" or legal conclusions contained in a complaint. Id. (quoting Aldana, 416 F.3d at 1248).

Further, the Court may dismiss a complaint "if the facts as pled do not state a claim for relief that is plausible on its face." Sinaltrainal, 578 F.3d at 1260.   In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court

3

observed that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  500 U.S. at 555.  Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

The mere possibility that the defendant might have acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Iqbal, 556 U.S. at 678.  Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

The Court's consideration of a motion to dismiss is generally limited to the face of the complaint itself; however, "[t]he [United States Court of Appeals for the] Eleventh Circuit has held that, when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Davis v. Williams Commc'ns, Inc., 258 F. Supp. 2d 1348, 1352 (N.D. Ga. Mar. 18, 2003). Therefore, when addressing a motion to

5

dismiss, the Court "may also consider any attachments to the complaint, matters of public record, orders, and items appearing in the record." Clark v. Bibb Cnty. Bd. of Educ., 174 F. Supp. 2d 1369, 1370 (M.D. Ga. Nov. 7, 2001); see 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1364 (3d ed. 2004) (stating that "judicial notice may be taken of prior pleadings and proceedings[,] . . . transcripts of prior court proceedings, and various documents that are matters of public record" (footnotes omitted)).[1]

---

[1] The Court consequently can consider the Security Deed, the Deed Under Power, and the Special Warranty Deed presented by Defendants because those documents are matters of public record. (Def. McCalla's Mot. Dismiss Exs. A-C (Docket Entry Nos. 24-2, 24-3, and 24-3); Def. Chase and Freddie Mac's Mot. Dismiss Exs. A-B (Docket Entry Nos. 25-2, 25-3).)

6

## II.   Background

### A.   Plaintiff's Allegations

#### 1.   The Parties

Plaintiff brought this action in her capacity as the administrator of the Estate of Wyatt E. Langford (the "Estate") and in her individual capacity.  (Compl. (Docket Entry No. 1-2 at 1.) Plaintiff resides in Chatsworth, Georgia. (Id. ¶ 1.)   Defendant Chase is a foreign corporation authorized to conduct business in Georgia.   (Id. ¶ 2.) Defendant McCalla is a Georgia limited liability company. (Id. ¶ 3.)  Defendant Freddie Mac "is a private corporation operating under the purview of the United States Congress in the State of Georgia."  (Id. ¶ 4.)

7

AO 72A

(Rev.8/8
2)

### 2.    Events Giving Rise to this Action

Wyatt E. Langford ("Mr. Langford") and his wife, Judith Langford ("Mrs. Langford") lived at 571 Parson Road, Chatsworth, Georgia (the "Property").  (Compl. ¶ 6.)  "The [P]roperty was handed down to [the Langfords] from their family and had been in the Langford family for several generations."  (Id.)

In or around June or July 2007, the Langfords "determined that they would like to make some supplemental income," and "agreed that the best way to do this was to build a garage building near their residence that would allow [Mr. Langford] to perform freelance work as an auto mechanic."  (Compl. ¶ 8.)  The Langfords "approached Defendant Chase about receiving a loan and securing it with

8

[the Property]." (Id.) Defendant Chase loaned Mr. Langford approximately $80,000 (the "Mortgage"). (Id.) Mr. Langford used the Mortgage proceeds to construct an additional building on the Property for his mechanic business. (Id. ¶ 9.)

Mr. Langford made regular payments on the Mortgage. (Compl. ¶ 9.) On August 18, 2009, Ms. Langford suffered a sudden, deadly heart attack. (Id. ¶ 10.) Ms. Langford's death "deprived the Langford family of a crucial source of income" from Ms. Langford's salary. (Id.)

In early 2010, Mr. Langford "contacted Defendant Chase and inquire[d] about a loan modification." (Compl. ¶ 11.) According to Plaintiff, "Defendant Chase informed [Mr.] Langford that he would qualify for a loan modification due to

9

his wife's death and instructed him to fill out and send to Defendant Chase a modification package."   (Id.)   Mr. Langford complied.  (Id.)

Plaintiff alleges:

> Over the course of the next two years, [Mr.] Langford communicated with Defendant Chase on a monthly or weekly basis.  He was repeatedly asked to submit the same paperwork on a monthly or bi-monthly basis and Mr. Langford complied with these requests.  At all times Defendant Chase informed [Mr.] Langford that he qualified for a loan modification and that it would be processed quickly.  At no time did Defendant Chase indicate that Mr. Langford would not qualify for a loan modification. Further, Defendant Chase instructed [Mr.] Langford that he did not have to make payments on the [Mortgage] during the modification period . . . due to his unique hardship, i.e., the death of his wife.

(Compl. ¶ 12.)  Plaintiff alleges that because "this land had been in his family for many years, and . . . Defendant Chase

10

AO 72A

(Rev.8/8
2)

continually told him that he qualified for a mortgage modification but then refused to execute the modification, [Mr.] Langford began to suffer depression and anxiety issues due to the actions of Defendant Chase." (Id. ¶ 13.) Mr. Langford also "began to consume alcohol in excess of his normal consumption levels." (Id.) Plaintiff alleges that "[Mr.] Langford sought medical treatment for his depression, anxiety and increased use of alcohol, all caused by the actions of Defendant Chase." (Id. ¶ 14.) Mr. Langford received prescriptions for medications to treat anxiety and depression. (Id.) According to Plaintiff, Mr. Langford "took these medications as prescribed and continued to deal with Defendant Chase in a good faith effort to modify his mortgage and continue to pay his obligations." (Id.)

11

Plaintiff alleges:

15.

After a year of dealing with Defendant Chase and being told that he was "qualified" for a mortgage modification and that the process was "easy" and "simple" and that it would be "completed soon," Defendant Chase wrongfully sent [Mr.] Langford a foreclosure notice for the first time on or about January or February of 2012. Alarmed, [Mr.] Langford contacted Defendant Chase and inquired as to why he had been sent this notice.  Defendant Chase informed him that it was a mistake and they would cancel the foreclosure sale.  This notice was particularly alarming to [Mr.] Langford because he had significant equity in the [P]roperty and it had been in the family for many years.  In addition, after the death of his wife, his daughter and grandchild had moved back [to] the [P]roperty to assist [Mr.] Langford and his daughter and grandchild permanently resided there.   [Mr.] Langford continued to seek treatment for the depression and anxiety that the actions of Defendant Chase were causing him.

12

16.

Defendant Chase continued this same pattern of behavior for the next eight months, alternatively telling [Mr.] Langford that he would be given a modification and then wrongfully noticing a foreclosure on his family property. Each time [Mr.] Langford would properly communicate with [Defendant] Chase and [Defendant] Chase would cancel the wrongful foreclosure. This occurred at least three times from January 2012 to July 2012.

17.

On August 13, 2012, [Mr.] Langford awoke and was suffering from anxiety, depression and had issues breathing. He visited his primary care physician and informed her of his depression and anxiety due to his dealings with Defendant Chase. His primary care physician again prescribed him medication for depression. Upon returning home, [Mr.] Langford began to review recent correspondence from [Defendant] Chase concerning yet another wrongful foreclosure notice on his [Property]. While reviewing this correspondence, [Mr.] Langford suffered a massive stroke, related to the stress and anxiety

13

caused by the actions of Defendant Chase.  [Mr.] Langford died as a result of this stroke.

(Compl. ¶¶ 15-17.)

Plaintiff alleges that she "immediately began communicating with [Defendant] Chase regarding the death of [Mr. Langford] and the retention of the [Property]." (Compl. ¶ 18.)  According to Plaintiff, "[Defendant] Chase agreed that [it] would postpone any foreclosure until letters of administration had been issued for [the Estate]."  (Id.)

In September 2012, Plaintiff received a third foreclosure notice from Defendant Chase.  (Compl. ¶ 19.) Defendant McCalla signed the notice, which stated that Defendant Chase was "[t]he entity that has full authority to negotiate, amend, and modify all terms of the [M]ortgage." (Id.)  Plaintiff sought legal assistance.  (Id.)

14

AO 72A
(Rev.8/8
2)

According to Plaintiff, her counsel "immediately contacted [Defendant] Chase and inquired as to the status of the modification and noted that the original mortgagee had died after reading correspondence received from Defendant Chase." (Compl. ¶ 20.)  Plaintiff sates that "Defendant Chase indicated that [it was] aware of the circumstances and planned to postpone the foreclosure." (Id.) "Defendant Chase requested letters of administration,' and Plaintiff's counsel told Defendant Chase "that the letters were pending and would be sent to [Defendant] Chase as soon as they were issued." (Id.)

On October 29, 2012, the probate court issued letters of administration for the Estate to Plaintiff.  (Compl. ¶ 21.) Plaintiff alleges that she "immediately provided" those

15

letters to Defendant Chase. (Id.) According to Plaintiff, "Defendant Chase again stated that [it was] going to postpone the foreclosure and provide a modification to Plaintiff." (Id.) Plaintiff alleges that her counsel "also contacted Defendant McCalla, who also stated that the foreclosure would be postponed and that Defendant Chase had received all necessary paperwork." (Id.)

Plaintiff and her counsel "continued to contact Defendants Chase and McCalla regarding postponement of the foreclosure sale." (Compl. ¶ 22.) According to Plaintiff, "[b]oth Defendants continued to assure Plaintiff that the sale would be postponed, although they noted that they were waiting for final approval [from] some higher authority." (Id.)

16

On November 5, 2012, Plaintiff "contacted Defendants Chase and McCalla, who both assured Plaintiff that the sale would likely be postponed and to call back on the day of the foreclosure sale in order to confirm." (Compl. ¶ 23.) On November 6, 2012, Plaintiff's counsel contacted Defendants Chase and McCalla "to confirm that the sale had been postponed." (Id. ¶ 24.) Plaintiff's counsel "was informed that the sale had not been postponed and had gone forward . . . because [Defendant Freddie Mac] had refused to approve the postponement." (Id.) According to Plaintiff, "this was the first time that [she or her counsel] had ever been informed that [Defendant] Freddie Mac was involved [in] the decision process." (Id.)

17

"Plaintiff[] immediately contacted [Defendant] Freddie Mac regarding the loan." (Compl. ¶ 25.) According to Plaintiff, Defendant Freddie Mac informed her that it "was unaware why Defendants Chase and McCalla had been communicating with Plaintiff[], as the loan was owned by [Defendant] Freddie Mac." (Id.) Plaintiff alleges that Defendant Freddie Mac requested that she send it "documentation of the sale" and that Defendant Freddie Mac "stated that [it] would launch an investigation into the matter and seek to resolve it." (Id.)

According to Plaintiff, Defendant Freddie Mac did not investigate the matter, instead choosing to file "a deed under proof of sale and claim that [it] properly foreclosed on the [Property]." (Compl. ¶ 26.) Plaintiff further contends

18

that Defendant Freddie Mac "is wrongfully seeking to evict Plaintiff[] from [her] ancestral home before [the probate court has] had the opportunity to probate[] the Estate's interest." (Id. ¶ 27.) According to Plaintiff, "Defendants filed their action for eviction on December 10, 2012, in what appears to be a calculated attempt to wrongfully evict Plaintiff[] during the Christmas season." (Id.) Plaintiff further complains that "Defendant Chase continues to send large amounts of correspondence to [Mr.] Langford promising to modify his mortgage." (Id. ¶ 28.)

## B.   Relevant Documents

### 1.   The Security Deed

On July 12, 2007, Mr. Langford and Mrs. Langford executed a security deed (the "Security Deed") in favor of

19

Defendant Chase to secure the Mortgage.  (Def. McCalla's Mot. Dismiss Ex. A (Docket Entry No. 24-2) at 1-2.)  The Security Deed provided, in relevant part:

> Extension of the time for payment or modification of amortization of the sums secured by this [Security Deed] granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this [Security Deed] by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

(Id. at 10.)  The Security Deed also stated, in relevant part:

20

> The Note or a partial interest in the Note (together with this [Security Deed]) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments under the Note and this [Security Deed] and performs other mortgage loan servicing obligations under the Note, this [Security Deed], and Applicable Law. There might also be one or more changes of the Loan Servicer unrelated to a sale of the Note.

(Id. at 11.)

## 2. Deed Under Power

On November 6, 2012, Defendant Chase executed a Deed Under Power in which it stated that it had purchased the Property at the foreclosure sale. (Def. McCalla's Mot. Dismiss Ex. B (Docket Entry No. 24-3.) The Deed Under Power was recorded in the Murray County, Georgia, real estate records on December 7, 2012. (Id. at 1.)

21

AO 72A

(Rev.8/8 2)

### 3.   Special Warranty Deed

On November 19, 2012, Defendant Chase executed a Special Warranty Deed in which it transferred the Property to Defendant Freddie Mac.  (Def. McCalla's Mot. Dismiss Ex. C (Docket Entry No. 24-4).)  On December 7, 2012, the Special Warranty Deed was recorded in the Murray County, Georgia, real estate records.  (Id. at 1.)

### C.  Procedural Background

On or about December 17, 2012, Plaintiff filed this lawsuit in the Superior Court of Murray County, Georgia. (Docket Entry No. 1-2.)   Plaintiff asserted the following claims, all of which arose under Georgia law: (1) wrongful foreclosure (Compl. ¶¶ 29-33); (2) intentional infliction of emotional distress (id. ¶¶ 34-36); (3) fraud (id. ¶¶ 37-42); (4)

22

AO 72A
(Rev.8/8
2)

breach of the duty of good faith and fair dealing (id. ¶¶ 43-46); (5) declaratory judgment as to the validity of the foreclosure notice, sale, and eviction (id. ¶¶ 47-53); and (6) attorney's fees and expenses under O.C.G.A. § 13-6-11 (id. ¶¶ 54-56).   Plaintiff also sought punitive damages. (Id. at 21.)  On January 22, 2013, Defendants removed the case to this Court.  (Docket Entry No. 1.)

On February 25, 2013, the Court entered an Order staying the proceedings in this case pending the Georgia Supreme Court's decision resolving the certified questions in You v. JPMorgan Chase Bank, N.A., Civil Action File No. 1:12-CV-0202-JEC.  (Order of Feb. 25, 2013 (Docket Entry No. 19).)  The Court directed the Clerk to administratively terminate this action pending the decision in You.  (Id.)  The

23

AO 72A

(Rev.8/8
2)

Court also denied without prejudice Defendants' then-pending Motions to Dismiss. (Id.)

On July 2, 2013, Defendants Freddie Mac and Chase filed a notice with the Court indicating that the Georgia Supreme Court had issued an opinion in the You case. (Docket Entry No. 22.)  On that same day, the Court entered an Order reopening this case and lifting the stay of proceedings. (Order of July 2, 2013 (Docket Entry No. 23).) The Court also permitted Defendants to re-file their Motions to Dismiss within twenty-one days.  (Id.)

On July 23, 2013, Defendant McCalla filed its Motion to Dismiss.  (Docket Entry No. 24.)  On that same day, Defendants Chase and Freddie Mac filed their Motion to Dismiss. (Docket Entry No. 25.) The briefing processes for

24

the Motions are complete, and the Court consequently finds that this matter is ripe for resolution.

## III.   Discussion

Both Motions to Dismiss raise similar arguments.  The Court consequently considers the Motions together.

### A.   Plaintiff's Complaint Fails to State Viable Claims for Relief

Defendants argue that Plaintiffs' Complaint fails to state viable claims for relief because the Complaint simply contains conclusory allegations and legal conclusions.  The Court's review of Plaintiff's Complaint demonstrates that the Complaint, at most, sets forth the bare elements of Plaintiff's claims.  Plaintiff's Complaint consequently fails to

25

comply with the pleading standards established by <u>Twombly</u> and <u>Iqbal</u>.

For the reasons discussed above, the Court concludes that Plaintiff's Complaint fails to comply with the pleading standards established by <u>Twombly</u> and <u>Iqbal</u>.  The Court's analysis could stop here.   The Court, however, will endeavor to address the merits of the individual causes of action set forth in Plaintiff's Complaint.

## B.   Wrongful Foreclosure

Plaintiff's wrongful foreclosure claim appears to contend that Defendant Chase lacked standing to foreclose on the Property because Defendant Chase was not the holder of the Security Deed or the Note.   The record, however, demonstrates that Defendant Chase held the

26

Security Deed when the foreclosure sale occurred.  To the extent that Plaintiff contends that Defendant Chase also must possess or produce the Note to foreclose, the Georgia Supreme Court recently rejected this argument.  <u>You v. JP Morgan Chase Bank</u>, 293 Ga. 67, 74, 743 S.E.2d 428, 433 (2013) ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed.").

Plaintiff also has not successfully alleged the elements of a wrongful foreclosure claim.  Under Georgia law, a plaintiff asserting a wrongful foreclosure claim must show that the party conducting the foreclosure violated Georgia's

27

foreclosure statutes.  <u>McCarter v. Bankers Trust Co.</u>, 247 Ga. App. 129, 132, 543 S.E.2d 755, 758 (2000).  "'Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages.'"  <u>DeGolyer v. Green Tree Servicing, LLC</u>, 291 Ga. App. 444, 448, 662 S.E.2d 141, 147 (2008) (quoting <u>Heritage Creek Dev. Corp. v. Colonial Bank</u>, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004).  "In exercising a power of sale, the foreclosing party is required only to advertise and sell the property in accordance with the terms of the instrument and to conduct the sale in good faith."  <u>Rapps v. Cooke</u>, 246 Ga. App. 251, 253, 540 S.E.2d

AO 72A
(Rev.8/8
<sub>2)</sub>

241, 242 (2000).   Here, other than contending that the notice of the foreclosure sale improperly listed Defendant Chase, not Defendant Freddie Mac, as the party with authority to modify the Mortgage, Plaintiff has failed to allege sufficient facts to show that the foreclosure violated the applicable Georgia statutes.   Further, to the extent that Plaintiff contends that Defendant Freddie Mac held the Mortgage, the public records fail to support that contention. Under those circumstances, Plaintiff has not stated a viable wrongful foreclosure claim.

Plaintiff also failed to allege causation to support her wrongful foreclosure claim.   "To plead causation, Plaintiff must allege that [her] injury was caused by the actions and omissions of [Defendants]." Freeman v. Wells Fargo Bank,

AO 72A

(Rev.8/8
2)

N.A., Civil Action File No. 1:12-CV-2854-RWS, 2013 WL

2637121, at *3 (N.D. Ga. June 11, 2013) (internal quotation

marks and citation omitted).   Here, Plaintiff's own

allegations establish that the Mortgage was in default.

Under those circumstances, "Plaintiff's alleged damages .

. . flow from [her] own failure to make payments, which

resulted in foreclosure." Id.; see also Ezuruike v. Bank of

N.Y. Mellon, Civil Action File No. 1:11-CV-4030-JEC-AJB,

2012 WL 3989973, at *4 (N.D. Ga. May 24, 2012) ("Plaintiff

. . . does not explain how Defendant's allegedly wrongful

actions . . . could have been the proximate cause of the

Property's descent into foreclosure proceedings.  Rather,

the trigger for the attempted foreclosure action appears to

have been Plaintiff's failure to make payments on the

30

loan."); <u>Warque v. Taylor, Bean & Whitaker Mortg. Corp.</u>, Civil Action No. 1:09-CV-1906-ODE-CCH, 2010 WL 9474634, at *5 (N.D. Ga. July 30, 2010) (finding plaintiff failed to allege facts to support wrongful foreclosure claim where foreclosure resulted from plaintiff's failure to make payments due under loan).   Plaintiff's allegations therefore are insufficient to establish causation.

Further, Plaintiff cannot base her wrongful foreclosure claim on Defendants' failure to grant a modification of the Mortgage. <u>Miller v. Chase Home Fin., LLC</u>, 677 F.3d 1113, 1116-17 (11th Cir. 2012); <u>see also Moore v. McCalla Raymer, LLC</u>, 916 F. Supp. 2d 1332, 1343 (N.D. Ga. Jan. 2, 2013) ("[S]eeking a loan modification does not give Plaintiff a cause of action for wrongful foreclosure.").

31

Plaintiff therefore cannot establish a wrongful foreclosure claim based on this argument.[2]

For the reasons discussed above, Plaintiff's Complaint fails to allege a viable wrongful foreclosure claim.   The Court consequently grants the Motions to Dismiss as to that claim.

**B.   Intentional Infliction of Emotional Distress**

Plaintiff also asserts a claim for intentional infliction of emotional distress.  "To recover on an intentional infliction of emotional distress claim in Georgia, a plaintiff must show: (1) the defendant's conduct was intentional or reckless; (2)

---

[2]In her response to the Motions to Dismiss, Plaintiff indicated that she did not intend to pursue a wrongful foreclosure claim based on Defendants' refusal to grant a mortgage modification. (Pl.'s Resp. Opp. Defs.' Mots. Dismiss (Docket Entry No. 26) at 9.) The Court addressed the claim in an abundance of caution.

32

AO 72A

(Rev.8/8
2)

the defendant's conduct was extreme and outrageous; (3) the wrongful conduct caused the emotional distress; and (4) the emotional harm was severe." Bradley v. Pfizer, Inc., 440 F. App'x 805, 810 (11th Cir. 2011). "Extreme and outrageous conduct is that which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Canziani v. Visiting Nurse Health Sys., Inc., 271 Ga. App. 677, 679, 610 S.E.2d 660, 662 (2005)). "'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" Id. (quoting Bridges v. Winn-Dixie Atlanta, Inc., 176 Ga. App. 227, 230, 335 S.E.2d 445, 448 (1985)).

33

Plaintiff's Complaint contains only conclusory allegations with respect to her intentional infliction of emotional distress claim. After Twombly and Iqbal, however, a plaintiff can no longer state a valid claim for relief based on conclusory allegations. Consequently, Plaintiff's Complaint does not state a viable claim for intentional infliction of emotional distress.

In any event, Plaintiff has failed to plead conduct on the part of Defendants that would satisfy the "extreme and outrageous" conduct element required for an intentional infliction of emotional distress claim. Even accepting Plaintiff's allegations concerning Defendants' conduct as true, that conduct was not sufficiently outrageous to support an intentional infliction of emotional distress claim. See

34

Echeverria v. BAC Home Loans Servicing, LP, --- F. App'x ---, 2013 WL 3752138, at *1 (11th Cir. July 18, 2013) ("[T]he district court correctly held that the defendants' alleged conduct (e.g., not providing the plaintiffs with correct information concerning their mortgage loan, refusing to modify that loan, losing papers and documents, and threatening foreclosure) was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." (internal quotation marks and citation omitted)); Mayrant v. Deutsche Bank Trust Co. Ams., Civil Action File No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *3 (N.D. Ga. May 17, 2011) (concluding that defendants' conduct "was neither reckless nor extreme and outrageous" where defendants simply "exercised their

35

AO 72A

(Rev.8/8
2)

contractual right to foreclose on the Property pursuant to the power of sale in the security deed").

As discussed above, Plaintiff's Complaint fails to allege a viable intentional infliction of emotional distress claim. The Court consequently grants the Motions to Dismiss with respect to that claim.

## C.  Fraud

Plaintiff also asserts a fraud claim.  For the reasons discussed below, that claim fails as a matter of law.

"The elements in an action for fraud are: 'false representation by a defendant, (2) scienter, (3) intent to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by the plaintiff, and (5) resulting damages to the plaintiff.'" Jenkins v. BAC Home Loan Servicing, LP, 822 F.

AO 72A
(Rev.8/8
2)

Supp. 2d 1369, 1380 (M.D. Ga. 2011) (quoting <u>Martin v. Ctr.</u> <u>Pointe Inv., Inc.</u>, 310 Ga. App. 253, 256-57, 712 S.E.2d 638, 641 (2011)). To plead a fraud claim with particularity, as required by Federal Rule of Civil Procedure 9(b), "'a plaintiff must plead facts as to time, place, substance of the defendant[']s alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.'" <u>Id.</u> (alteration in original) (quoting <u>Mullinax v. United Mktg. Grp., LLC</u>, No. 1:10-cv-03585-JEC, 2011 WL 4085933, at *12 (N.D. Ga. Sept. 13, 2011)). "This means that to state an actionable claim for fraud, the plaintiff must state the 'who, what, when[,] where, and how.'" <u>Id.</u> (alteration in original) (quoting <u>Mullinax</u>, 2011 WL 4085933, at *12). Plaintiff's allegations simply are not

37

AO 72A
(Rev.8/8
2)

sufficient to plead her fraud claim with the required particularity, and the claim therefore is subject to dismissal.

Even if Plaintiff had pleaded her fraud claim with particularity, that claim still would fail.  Plaintiff based her fraud claim on her contentions that Defendants promised to modify the Mortgage and agreed not to foreclose on the Property.   "Generally, fraud is not actionable when predicated upon either promises to perform some act in the future or a mere failure to perform promises made."  <u>Caselli v. PHH Mortg. Corp.</u>, Civil Action File No. 1:11-CV-2418-RWS, 2012 WL 124027, at *8 (N.D. Ga. Jan. 13, 2012). Any alleged statements that Defendants would agree to a modification or had agreed that they would not foreclose "are not actionable because they were promises to act in

38

the future." Id.   Under those circumstances, Plaintiff's Complaint fails to state a viable fraud claim.

For the reasons discussed above, Plaintiff's Complaint does not allege a viable fraud claim.   The Court consequently grants the Motions to Dismiss as to that claim.

## D.   Breach of the Duty of Good Faith and Fair Dealing

Plaintiff's Complaint also includes a claim for breach of the duty of good faith and fair dealing.  Under Georgia law, the covenant of good faith and fair dealing is not an independent contract term.  Stuart Enters., Int'l, Inc. v. Peykan, Inc., 252 Ga. App. 231, 234, 555 S.E.2d 881, 884 (2001).  Georgia law consequently does not recognize an independent claim for breach of the duty of good faith and fair dealing.  Id., id.  As a result, a party cannot maintain a

39

claim for breach of the duty of good faith and fair dealing unless the party can show a breach of another contract provision. Id., id. Here, Plaintiff has not alleged a breach of contract claim, and her Plaintiff's claim for breach of the duty of good faith and fair dealing consequently fails as a matter of law.

Even if Plaintiff had asserted a breach of contract claim, her claim for breach of the duty of good faith and fair dealing still would fail. The Security Deed specifically provided that forbearance by the lender, which included accepting late or reduced payments, did not constitute a waiver of the lender's right to foreclose under the Security Deed. (Def. McCalla's Mot. Dismiss Ex. A at 10.) The Security Deed further stated that the lender was not

40

required to modify payments or amortization under the Mortgage.  (Id.)  Finally, the Security Deed permitted the lender to sell the Property in the event of a default.  (Id. at 13.) Under those circumstances, Defendants did not violate the terms of the Security Deed -- or breach the duty of good faith and fair dealing -- by foreclosing on the Property or by refusing to grant a modification.  See Rome Bank & Trust Co. v. Kerce, 140 Ga. App. 596, 600, 231 S.E.2d 464, 467 (1976) ("[W]here the debt was secured by a security deed and note giving the creditor the right and power to advertise and sell the security for the payment of the balance due on the debt upon default of the debtor, the creditor commits no libel or tortious act by exercising the right granted in contract."); see also Jenkins v. BAC Home Loan Servicing,

41

LP, 822 F. Supp. 2d 1369, 1378 (M.D. Ga. Sept. 29, 2011) ("[T]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give [the party] the right to do." (internal quotation marks and citation omitted)).

For the reasons discussed above, Plaintiff's claim for breach of the duty of good faith and fair dealing fails as a matter of law.  The Court consequently grants the Motions to Dismiss as to that claim.

**E.   Declaratory Judgment**

Plaintiff also seeks a declaratory judgment setting aside the foreclosure sale.[3]   Plaintiff failed to allege that she

---

[3]In her response to the Motions to Dismiss, Plaintiff states that the Murray County Superior Court "awarded the equitable relief that [she] sought . . . in December of 2012." (Pl.'s Resp. Opp. Defs.' Mots. Dismiss at 8.)  Because it is not entirely clear what equitable

42

tendered the amount owing under the Mortgage, and she consequently is not entitled to set aside the foreclosure sale.  Moore, 2013 WL 28253, at *7.   Further, Plaintiff's attempts to obtain a loan modification "do not constitute a tender to pay giving her the right to seek equity."  Id.

For the reasons discussed above, Plaintiff's Complaint fails to allege a viable declaratory judgment claim.   The Court therefore grants the Motions to Dismiss as to that claim.

### F.   Attorney's Fees and Punitive Damages

Plaintiff seeks attorney's fees and expenses under O.C.G.A. § 13-6-11, as well as punitive damages.  For the

---

relief Plaintiff actually sought, much less which of her requests for equitable relief remain pending, the Court nonetheless addresses this claim.

43

AO 72A

(Rev.8/8
2)

reasons discussed above, Plaintiff's Complaint fails to state viable claims for actual damages. Under those circumstances, Plaintiff's claims for attorney's fees and punitive damages also fail. <u>Parker v. Scrap Metal Processors, Inc.</u>, 386 F.3d 993, 1019 n.34 (11th Cir. 2004); <u>see also</u> <u>D.G. Jenkins Homes, Inc. v. Wood</u>, 261 Ga. App. 322, 325, 582 S.E.2d 478, 482 (2003) ("The derivative claims of attorney's fees and punitive damages will not lie in the absence of a finding of compensatory damages on an underlying claim."). The Court consequently grants the Motions to Dismiss as to those claims.

44

### G. Summary

In sum, Plaintiff's Complaint fails to set forth viable claims for relief. The Court therefore grants the Motions to Dismiss and dismisses Plaintiff's Complaint in its entirety.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS** Defendant McCalla's Motion to Dismiss [24] and **GRANTS** Defendant Chase and Freddie Mac's Motion to Dismiss [25]. The Court **DISMISSES** this action. Because it does not appear that Plaintiff could re-plead her allegations to state viable claims for relief, this dismissal is **WITH PREJUDICE**.

45

Finally, the Court **DIRECTS** the Clerk to **CLOSE** this case.

IT IS SO ORDERED, this the 12 day of August, 2013.

UNITED STATES DISTRICT JUDGE

46